**CONTINENTAL T.V., INC., Plaintiff,**

**v.**

**GTE SYLVANIA INCORPORATED, Defendant.**

**No. C–44251–WAI.**

United States District Court, N. D. California.

Dec. 4, 1978.

Glenn E. Miller, Johnston, Miller & Giannini, San Jose, Cal., for plaintiff.

M. Laurence Popofsky, Stephen V. Bomse, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendant.

## MEMORANDUM OF DECISION

INGRAM, District Judge:

This private antitrust action is again before this court after appeal from less than the whole of the judgment and ultimate reversal. (*See, GTE Sylvania Incorporated v. Continental T.V., Inc.*, 537 F.2d 980 (1976); *Continental T.V., Inc. v. GTE Sylvania Incorporated*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977).) Plaintiff Continental T.V., Inc.[1] (Continental) now moves this court pursuant to Fed.R.Civ.P. 16 for an order determining the issues to be retried and allocating the parties' respective burdens of proof as to each. Concurrently, defendant GTE Sylvania Incorporated[2] (Sylvania) moves for summary judgment, contending that there remains no material triable issue of fact in dispute and that, in light of the Supreme Court opinion, defendant is entitled to summary judgment as a matter of law. For reasons which will be explained, defendant's motion is well taken, and therefore summary judgment in its favor must be granted.

Although it is not necessary to again recite in detail the facts underlying this dispute, that having been done previously by both appellate courts (537 F.2d, at 982–986; 97 S.Ct., at 2551–2553), a brief summary of the relevant factual and procedural histories is required in order to place the parties' respective motions in their proper context.

### Factual History

For many years prior to 1965, the year in which the complaint in this action was filed, defendant Sylvania manufactured a number of products including television sets. By 1962 its share of the television market had declined to 1 or 2 percent, and in an effort to increase its market penetration it (1) hired new and aggressive management personnel, and (2) instituted a franchise program which involved the elimination of its wholesale distributors in favor of direct sales to its franchise retailers. Further, under the new program, the number of existing retailers was reduced in an effort to limit intrabrand competition.[3] Sylvania's hopes were that by limiting the level of competition among its retailers, it would strengthen and promote its own brand vis-a-vis other brands of televisions.[4] The effect was apparently successful as was noted

---

1. Though plaintiffs' antitrust claims arose by cross-complaint, the convention adopted by the previous trial court in referring to cross-complainants as "plaintiffs" will be followed here. Plaintiffs in fact consist of four separate but affiliated corporations: Continental T.V., Inc.; A & G Sales, Inc.; Sylpac, Inc.; and S.A.M. Industries, Inc. Plaintiffs will be collectively referred to herein as either "Continental" or "plaintiff".

2. Sylvania products had long been manufactured by Sylvania Electric Products, Inc., which, in turn, was a wholly owned subsidiary of General Telephone and Electronics, a multinational conglomerate. After the original trial had concluded, and during the pendency of Sylvania's appeal in the Ninth Circuit Court of Appeals, this corporation was merged into GTE, which name was then changed to GTE Sylvania. Sylvania, henceforth, was and is an operating division of GTE Sylvania.

3. Intrabrand competition is the competition between the distributors—wholesale or retail—of the product of a particular manufacturer. Here, the competition that would have existed between two or more of Sylvania's franchised retailers in the sale of Sylvania products.

4. As noted in the Supreme Court opinion, it is this type of competition, i. e. interbrand competition, which is the primary concern of antitrust law. (Supreme Court opinion, 97 S.Ct., at 2559, n.19).

by the appellate courts.[5] While this new program neither restricted dealers from carrying other brands or the persons to whom they could sell, nor established exclusive dealerships, it did enforce location restrictions upon the dealers. Thus, a retailer to whom Sylvania sold televisions was not allowed to sell such products from locations other than as authorized by Sylvania. It is precisely this vertical location restriction that is at the heart of plaintiff's antitrust claim.

Plaintiff Continental during 1964–65 operated a chain of retail T.V. stores throughout northern California. By 1965, Continental had become one of Sylvania's largest and most successful dealers. In compliance with Sylvania's location restraints, as plaintiff opened each new store it sought prior authorization from defendant, and with but one exception authorization was granted. Prior to 1965, Continental had opened several new stores. and enjoyed gross sales in excess of $1,000,000 per year, and was being served with a $300,000 line of credit by Sylvania's financing agent, the J. P. Maguire Company, Inc. (Maguire), a national financing company.

Early in 1965, several things occurred which caused the relationship between Continental and Sylvania to deteriorate. First, dissatisfied with its sales in the San Francisco, California area, Sylvania decided to enfranchise a dealer in addition to plaintiff in the area formerly solely occupied by plaintiff. The proposed location for this new franchise was about one mile from Continental's outlet. Unhappy with this situation, plaintiff voiced its opposition, and being unsuccessful, terminated an order that it had previously placed with Sylvania, and for it substituted a large order with one of Sylvania's competitors, Philco.

Second, and concurrent with the dispute over the San Francisco market, plaintiff sought, but was refused, an outlet in the Sacramento, California market. That market was already being serviced by another of Sylvania's retailers. Undeterred, on September 7, 1965, Continental disregarded the location restriction and moved Sylvania inventory, which it had previously purchased through the Maguire financing, to a large and newly-opened store in Sacramento.

Two weeks later, for allegedly unrelated reasons, Sylvania's credit department reduced Continental's line of credit from $300,000 to $50,000. In response to this reduction in credit and the generally deteriorating relations with Sylvania, Continental withheld all payments owed to the financing company, Maguire. Shortly thereafter, Sylvania terminated Continental's franchises.

### Procedural History

This action commenced on October 12, 1965, when Maguire filed its complaint against Continental seeking judgment in the amount of $169,186.79. Since some of the notes upon which suit was premised were secured by goods in Continental's possession, claim and delivery proceedings were instituted whereby Maguire repossessed and sold such merchandise under the provisions of the Uniform Commercial Code. Attachments were levied to secure the balance of the debt.

Continental answered, counterclaimed, and cross-claimed on November 24, 1965. While denying that Maguire was entitled to judgment on its complaint, Continental's cross-claim sought damages against both Sylvania and Maguire for alleged violations of the antitrust laws, and for tortious injuries to its business and property under California law.

Continental's second amended cross-complaint contained four distinct claims. As ultimately tried and submitted to the jury upon separate, special interrogatories those were: (1) an alleged contract, combination or conspiracy in restraint of trade with respect to location restrictions and price fixing as an integral part of a single distribution policy in violation of Section 1 of the Sherman Act (15 U.S.C. § 1); (2) an alleged contract, combination or conspiracy in restraint of trade in violation of Section 1

---

5. *See*, 97 S.Ct., at 2552; 537 F.2d, at 983, n.3.

with respect to location restrictions alone; and (3) alleged wilful and malicious injurious conduct in violation of California law. The fourth claim for breach of contract against Sylvania and Maguire for alleged failure to supply or failure to finance certain merchandise in August—September 1965 was withdrawn by stipulation.

With Maguire's claim reserved for post-trial determination, Continental proceeded to trial by jury in the position of claimant. During the eighteen days of trial, the court afforded Continental a full opportunity to offer whatever evidence it chose respecting any and all of its claims. Following final arguments, the court instructed the jury on each of plaintiff's claims. In so doing, for those claims arising under the antitrust laws, the court relied upon *United States v.*

*Arnold Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967), and instructed the jury, over defendant's objections, that an agreement to restrict the location of the retailers' outlets amounted to a *per se* violation of Section 1 of the Sherman Act.

On November 6, 1970, the jury returned its verdict in the form of answers to special interrogatories, particularized as to each claim and each defendant. The form of verdict is set forth in full in the margin.[6]

Plaintiff thereafter moved the court to enter findings of fact and conclusions of law respecting its prayer for an injunction. Continental's entitlement to equitable relief was contested, but the court ultimately resolved to enter a limited injunction

---

**6.** A. Antitrust Claim

   1. Did Sylvania Electric Products, Inc. engage in a contract, combination or conspiracy in restraint of trade in violation of the antitrust laws with respect to location restrictions and price fixing as an integral part of a single distribution policy?

|   | X |
|---|---|
| Yes | No |

   2. Did Sylvania Electric Products, Inc. engage in a contract, combination or conspiracy in restraint of trade in violation of the antitrust laws with respect to location restrictions alone?

| X |   |
|---|---|
| Yes | No |

   3. Did John P. Maguire & Co., Inc. engage with Sylvania in a contract, combination or conspiracy:

     a. As described in Question 1 above?

|   | X |
|---|---|
| Yes | No |

     b. As described in Question 2 above?

|   | X |
|---|---|
| Yes | No |

   4. If the answer to Question 1, 2, or 3, is "Yes", did Continental T.V., Inc. sustain damage to its business or property as a proximate result of such violation of the antitrust laws?

| X |   |
|---|---|
| Yes | No |

   5. If the answer to Question 4 is "Yes", what is the amount of such damage?

         $591,505

B. Claim of Wilful and Malicious Injury

   1. Did Sylvania Electric Products, Inc. wilfully and maliciously cause injuries to Continental T.V.'s business in violation of California law?

|   | X |
|---|---|
| Yes | No |

   2. Did John P. Maguire & Co., Inc. wilfully and maliciously cause injuries to Continental T.V.'s business in violation of California law?

|   | X |
|---|---|
| Yes | No |

   3. If the answer to Question 1 and/or Question 2 is "Yes", did Continental T.V., Inc. sustain damage to its business or property as a proximate result of such violation of California law?

|   |   |
|---|---|
| Yes | No |

   4. If the answer to Question 3 is "Yes", what is the amount of such damage?

     $_____
       Actual

     $_____
       Punitive

/s/ _____
    Jury Foreman
    November 6, 1970

premised solely upon the *per se* theory. Findings and conclusions were thereupon entered in accordance with that determination. Continental made no post-trial motion respecting either those claims which it had lost to the jury or as to which no injunction was entered.

Concurrent with the proceedings on the injunction, Maguire moved for summary judgment on its amended complaint. By stipulation of the parties, the Maguire motion was granted and judgment was subsequently entered awarding Maguire the sum of $145,000 as principal, plus pretrial interest, costs and attorneys' fees.

Judgment was duly filed on December 11, 1970, awarding Continental the sum of $1,774,515 (treble of the $591,505 jury verdict plus costs and fees of $293,000). That judgment specifically·incorporated and enrolled an attached copy of the jury's verdict. Although Continental was awarded a substantial judgment, it did not receive all that it had requested. The amount of single damages awarded plaintiff was significantly below the sum prayed for in the cross-claim and argued to the jury. Moreover, the judgment specifically denied Continental any recovery under its pendent state tort claim or its cross-claim against Maguire.

On February 16, 1971, the court denied Sylvania's motion for judgment notwithstanding the verdict. On March 2, 1971, Sylvania filed its notice of appeal from the judgment insofar as it enrolled those portions of the jury's verdict adverse to Sylvania.[7] Consistent with the jury's verdict as well as the limited invocation of appellate jurisdiction, Sylvania challenged on appeal only that portion of the verdict and judgment adverse to it. Plaintiff neither filed its own notice of appeal nor assigned cross-error at any time during the appellate proceedings.

On April 29, 1976, the Ninth Circuit Court of Appeals, sitting *en banc*, rendered its opinion reversing the judgment on the grounds that *Schwinn, supra*, was factually distinguishable and, therefore, the *per se* jury instruction was unwarranted. The United States Supreme Court affirmed that decision, but did so on the different ground that *Schwinn* was factually indistinguishable, but since that case rested on unsound reasoning, it should be overruled.

Thus, as stated earlier, this action is again before the district court for further proceedings not inconsistent with the opinions expressed by the appellate courts.

### *Continental's Rule 16 Motion*

Plaintiff moves this court, pursuant to Fed.R.Civ.P. 16, to establish the issues that may be raised by retrying this action. The relief being sought is very broad. Continental wishes not only to litigate issues that were tried and lost on the first trial of this action, but also it wishes to raise one additional issue that had never before been asserted. As stated in Continental's Proposed Pretrial Order No. 1 After Remand, plaintiff requests:

"1.   That upon retrial plaintiffs are entitled to rely upon and present against defendants, as alternative theories of liability, the following claims:

---

7.  After entry of the trial court judgment, Sylvania filed a notice of appeal, and pursuant to Fed.R.App.P. 3(c), designated "the judgment, order or *part thereof* appealed from" (emphasis added) as follows:

"Notice is hereby given that Sylvania Electric Products, Inc., a corporation, cross-defendant above named, hereby appeals to the United States Court of Appeals for the Ninth Circuit from *designated portions* of the ·final judgment filed in this action on December 11, 1970, and duly entered of record on December 18, 1970, as follows:

1. From paragraph 1 of said judgment insofar as it enrolls *those portions* of the jury's

verdict adverse to Sylvania Electric Products, Inc.

2. From paragraph 2 of said judgment and the whole thereof.

3. From paragraph 3 of said judgment and the whole thereof." (Emphasis added)

Paragraph 2 of the judgment contained the jury's damage award to Continental predicated upon the determination of locations practice violations; paragraph 3 set forth the limited equitable relief granted by the court premised on the same adverse (to Sylvania) adjudication of the locations practice claim.

(a) That defendants contracted, combined and/or conspired to enforce against plaintiffs a distribution program having as a central purpose and effect the maintenance of retail prices, implemented, in part, through application of location/territorial restraints;

(b) That defendants contracted, combined and/or conspired to enforce against plaintiffs a distribution program having as a central purpose and effect the allocation of retail markets among SYLVANIA dealers, implemented through application of location/territorial restraints.

2. That upon retrial:

(a) JOHN P. MAGUIRE & CO., INC. remains as a defendant fully subject to plaintiff's claims;

(b) Plaintiffs are entitled to rely upon and present against defendants their common law claim that defendants' wilfully and maliciously damaged plaintiff's business and property." (At pps. 1–2)

In support of its requested relief, plaintiff makes two arguments. First, Continental argues that it had no right to appeal the adverse portions of the jury's verdict because those findings were not necessary to support the jury's damage award in its favor. (*See, 1B Moore's Federal Practice*, 2d Ed. 1974, ¶¶ 0.416[5], 0.443[5] (hereinafter *Moore's*).) Second, under the law of the case doctrine, this court has the discretion to permit the retrial of all issues originally raised.

■ The first argument is unpersuasive. Continental was plainly aggrieved by the jury's findings that: (1) Sylvania's location practice was not an integral part of a price fixing or retail maintenance scheme (Verdict, ¶ A1, *supra*); (2) defendant Maguire was free from liability on all claims (Verdict, ¶¶ A3(a), A3(b) and B2); and (3) defendants had not tortiously harmed plaintiff's business (Verdict, ¶¶ B1 and B2). Further, plaintiff was aggrieved by the jury's award of single damages far below those prayed. Being so aggrieved, and in light of the fact that Sylvania took an appeal, plaintiff had the right to cross appeal each of the adverse findings. *Hilton v. Mumaw*, 522 F.2d 588, 603 (9th Cir. 1975); *Fanchon & Marco, Inc. v. Hagenbeck-Wallace Shows Co.*, 125 F.2d 101, 103 (9th Cir. 1942); *1B Moore's, supra*. Failure to appeal the adverse portions of a jury verdict when such a right exists, establishes those findings on remand as *res judicata*. *Green v. American Tobacco Co.*, 325 F.2d 673, 678 (5th Cir. 1963), *cert. denied*, 377 U.S. 943, 84 S.Ct. 1349, 12 L.Ed.2d 306 (1964). Such a conclusion not only comports with the principles of judicial finality, but also gives effect to the trial court's use of submitting special interrogatories to the jury pursuant to Fed.R.Civ.P. 49(b). *Green, supra*.

■ Continental's second argument regarding the law of the case doctrine, to the extent that it is even applicable, is foreclosed by the above conclusion. Therefore, proposed trial issue 1(a), 2(a) and 2(b) are barred and cannot be reasserted by plaintiff.

Regarding the final proposed trial issue, 1(b) above, it too may not be asserted by plaintiff. By this proposed trial issue, Continental seeks now, after more than 13 years of litigation, to convert its "vertical" case into a "horizontal" one. Such a theory[8] of Section 1 liability has never before

---

**8.** By this theory, plaintiff apparently seeks to show that Sylvania, at the behest of its franchised retailers, implemented its location restriction in order to allocate retail markets. Of course, horizontal division of markets accomplished by a conspiracy among competitors is a *per se* violation of Section 1. *Addyston Pipe & Steel, Co. v. United States*, 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899). Furthermore, if competitors induce their manufacturer to allocate markets, this too has been held to be a *per*

se violation of Section 1, *United States v. Topco Associates*, 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972), since such an act is, in effect, a horizontal agreement to divide territories.

In our case, however, Sylvania's new distribution program was hardly a vertical facade for an underlying horizontal conspiracy by Sylvania's retailers. First, as the facts indicate, many of those retailers were terminated at the inception of the new program. Second, Sylva-

been asserted by plaintiff, and it cannot properly do so now.

Consequently, the only issue open for retrial is that one which defendant Sylvania originally lost at trial and preserved by way of appeal,[9] i. e., the reasonableness under Section 1 of the Sherman Act of Sylvania's location practice. On this issue, defendant contends that no material triable issue of fact remains and, therefore, it is entitled to summary judgment as a matter of law.

*Sylvania's Summary Judgment Motion*

■ In overruling *Schwinn*, the Supreme Court made clear that non-price vertical restrictions are to be judged under the rule of reason standard.[10] (97 S.Ct., at 2562). This approach, unlike the conclusive presumption of illegality afforded a claimant under the *per se* theories, requires an examination of the economic impact which a challenged practice has on competition. Only when that practice has an overall adverse impact is it an unreasonable restraint of trade. While it is true that a location restriction clause will reduce or even eliminate intrabrand competition (*See, e. g., Snap-On Tools Corp. v. F. T. C.*, 321 F.2d 825, 854–55 (7th Cir. 1963)), that alone will not make the practice unreasonable. For as stated in the Supreme Court opinion, vertical restrictions, such as Sylvania's location restriction, may prove to be valuable tools by which a manufacturer may enhance interbrand competition. And it is interbrand competition, rather than intrabrand, which

is the primary concern of antitrust law. (97 S.Ct., at 2559, n.19).

■ An examination of the facts presented herein reveals that Sylvania's location practice had an overall pro-competitive effect. Prior to 1965, defendant was a "faltering, if not [a] failing," firm in the television industry. (97 S.Ct., at 2562, n.29). Sylvania was not part of an oligopolistic industry, but rather, was one of more than 100 television manufacturers in a competitive industry. By implementing its location clause practice, *inter alia*, Sylvania was able to increase its market share from a relatively insignificant 1 percent or 2 percent to approximately 5 percent, thereby becoming an effective interbrand competitor. Finally, Sylvania's use of a location clause was one of the less restrictive methods it might have employed to strengthen its market position.[11]

In light of this, the challenged practice used by defendant was not an unreasonable restraint of trade. Supporting this conclusion are the numerous decisions discussed in the Ninth Circuit opinion holding vertical location clauses to be legal. (537 F.2d, at 992–996). It is noteworthy that several of those cases were decided on defendants' motions for summary judgment. (*See, e. g., Salco Corp. v. General Motors Corp., Buick Motor Division*, 517 F.2d 567 (10th Cir. 1975); *Kaiser v. General Motors Corp.*, 530 F.2d 964 (3rd Cir. 1976), *aff'g.* 396 F.Supp.

---

nia had two or more dealers in all cities with populations over 100,000 (98 S.Ct., at 2552, n.2). And finally, it was the very enfranchising of plaintiff's competitor in the San Francisco market that, in part, gave rise to this case.

Regardless of the merits of plaintiff's proposed theory, it cannot be asserted now not having been raised before.

**9.** See footnote # 7, *supra*.

**10.** However, at least one commentator is of the opinion that the rule of reason test is not, at the present time, a clear standard by which to judge vertical restrictions. Posner, The Rule of Reason and the Economic Approach: Reflections on the *Sylvania* Decision, 45 Chi.L.Rev. 1 (1977). Professor Posner suggests two approaches to making the rule of reason operational. The first is to balance the detriment of

lessened intrabrand competition against the benefit of increased interbrand competition. The second, and the approach preferred by the author, is to "focus on the single question whether the restriction is intended to cartelize distribution or, on the contrary, to promote the manufacturer's own interest." *id.*, at 16–17.

Under the facts presented herein, Sylvania passes either test. The enhancement of interbrand competition more than offsets any decline in the intrabrand and Sylvania imposed the location clause to strengthen its own effectiveness rather than as an unrealistic attempt to cartelize an industry with more than 100 manufacturers.

**11.** *See*, ABA Antitrust Section, Monograph No. 2, Vertical Restrictions Limiting Intrabrand Competition (1977), p. 20, *et. seq.*

33 (E.D.Pa.1975)). Consequently, as a matter of law under the facts of this case, defendant Sylvania is entitled to summary judgment.

IT IS SO ORDERED.