668 F.2d 622
 213 U.S.P.Q. 903
 RAXTON CORPORATION, d/b/a Off the Rax, Plaintiff, Appellant,
v.
ANANIA ASSOCIATES, INC., d/b/a Off the Rack, Defendant, Appellee.
RAXTON CORPORATION, d/b/a Off the Rax, Plaintiff, Appellee,
v.
ANANIA ASSOCIATES, INC., d/b/a Off the Rack, Defendant, Appellant.
 Nos. 81-1383, 81-1414.
 United States Court of Appeals,
First Circuit.
 Argued Nov. 3, 1981.
Decided Jan. 14, 1982.
 
 Henry C. Nields, Concord, Mass., with whom Russell & Nields, Concord, Mass., was on briefs for Raxton Corporation, d/b/a Off the Rax.
 Steven J. Henry, Boston, Mass., with whom John F. McKenna, and Cesari & McKenna, Boston, Mass., were on briefs for Anania Associates, Inc., d/b/a Off the Rack.
 Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.
 COFFIN, Chief Judge.
 
 
 1
 These cross-appeals constitute a second round in this litigation centering on competing trademark rights in Massachusetts. The factual background of this litigation is set forth at length in our prior opinion, Raxton Corp. v. Anania Assoc., Inc., 635 F.2d 924 (1st Cir. 1980).
 
 
 2
 Plaintiff ("Rax") sells women's clothing at a discount store called "Off the Rax" in the vicinity of Norwood, Massachusetts. Defendant ("Rack") sells men's clothing at a discount store called "Off the Rack" in Brockton, Massachusetts. Rax opened stores in New Jersey and Illinois in September, 1978, and in Massachusetts in August, 1979. Rack opened its Massachusetts store in April, 1979.
 
 
 3
 In July, 1979, Rax sued Rack, alleging false designation of origin, false description, and false representation in violation of 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act), as well as trademark infringement and unfair competition under Massachusetts common law. Rack countersued on essentially the same grounds. The district court ruled that Rax's Massachusetts activities before August, 1979, were insufficient to establish trademark rights, but that Rax should nonetheless prevail under the doctrine of the "zone of natural business expansion". On appeal, we reversed. We held that the "natural expansion" doctrine is no more than a misnomer for a legitimate concern that subsequent trademark users not be allowed to trade on the preexisting good will of others. We further held that such concerns were irrelevant here, since Rack adopted its name in good faith and Rax had established no prior use of or reputation for the name in Massachusetts. We remanded the case to the district court for further consideration of Rack's counterclaim. The district court heard further arguments and issued an injunction in Rack's favor. Both sides appeal.
 
 I. The Rax Appeal
 
 4
 Rax argues two points on appeal. First, it contends that the initial district court proceeding did not rule on who had the prior use in Massachusetts, that we did not make such a ruling on appeal, and that the district court's finding on remand that Rack had the prior use is not supported by the evidence. Second, Rax contends that it is entitled to prevail because Massachusetts is part of its natural zone of "impansion". Without intending to demean conscientious professional effort we conclude that the first is ingenuous (or the reverse), the second ingenious, and neither has merit.
 
 
 5
 Rax's argument that the initial district court proceeding did not decide who had the prior use in Massachusetts is simply wrong. In its Memorandum of Decision dated January 21, 1980, the court stated as follows:
 
 
 6
 "Plaintiff (Rax) ... did not advertise its mark Off the Rax in Massachusetts until August 7, 1979, in preparation for opening the warehouse store to the public, nor did it sell to the general public in Massachusetts until that store opened.
 
 
 7
 ....
 
 
 8
 "Defendant (Rack) made its first sale on March 15, 1979. Its store opened on April 2, 1979....
 
 
 9
 ....
 
 
 10
 "Plaintiff does not dispute that defendant's first sale of goods ... and the opening of its store ... predate plaintiff's first public sale in Massachusetts. I do not find plaintiff's other activities in Massachusetts ... to establish prior use of Off the Rax by plaintiff in Massachusetts. Some of these activities do, however, establish that Massachusetts was a target area of expansion of plaintiff's stores." (Emphasis added.)The italicized portions clearly express two conclusions of the district court: (1) Rack's sale and store opening in March and April were legally significant uses for purposes of establishing priority; (2) Rax's first legally significant use for such purposes was its public sale in August.
 
 
 11
 Rax is technically correct in stating that the court's conclusion regarding the zone of natural expansion kept its analysis of prior use from being a "necessary finding" as that term is used in determining the scope of collateral estoppel. See Block v. Commissioners, 99 U.S. 686, 693, 25 L.Ed. 491 (1878); Wright, Miller & Cooper, Federal Practice and Procedure § 4421 (1981). The court could have justified its conclusion without discussing the issue. But that fact is irrelevant here, where we are concerned not with estoppel in collateral proceedings but with waiver of an issue during the course of a single lawsuit. For such purposes, the question is not what the trial court had to find, but what it did find.
 
 
 12
 In its first decision, the trial court thought carefully about who had the prior use and presented its conclusions on the record. In so doing, it was by no means offering conclusions on irrelevant questions. The point was fully litigated, and if the court had been able to decide it in Rax's favor, it would have avoided the quagmire of "natural expansion" doctrine. Indeed, had it not presented any conclusion, we might have considered remanding the first appeal to request a finding, in order to ensure that our own entry into that morass was essential.
 
 
 13
 Nonetheless, in responding to the first appeal, Rax chose not to challenge the trial court's analysis of prior use. Instead it chose only to defend the court's analysis of natural expansion. Therefore, our earlier opinion accepted the district court's finding on prior use as a "given". 635 F.2d at 926. And in its petition for a rehearing, Rax did not challenge that acceptance.
 
 
 14
 Now, Rax blithely abandons its past silence and demands that we address the priority issue in this second appeal. First, it argues that, since the district court's initial ruling on prior use was technically unnecessary, our first opinion required that on remand the district court reexamine that ruling. Second, it argues in its reply brief that, whether or not the issue was still open on remand, we should consider it on this appeal because Rack's cross-appeal puts the parties' past conduct in issue.
 
 
 15
 The latter argument is a lamentable non sequitur; the former argument is supported by neither law nor policy. It is not open to question that an appellee, as Rax was, should, in supporting a judgment below, challenge any finding or conclusion or absence thereof that it deems error as revealed by the record. United States v. American Railway Express Co., 265 U.S. 425, 44 S.Ct. 560, 68 L.Ed. 1087 (1923); 1B Moore's Federal Practice P 0.416(5), at 2303 (1980). The presentation on appeal of all viable justifications of a judgment ensures that simpler and speedier bases for decision are not overlooked, that occasions for remand are minimized, and that issues that may have appeared as independent alternatives to a trial court can be considered as mutually supporting interdependent parts of an appellate decision.
 
 
 16
 Since the district court made a finding in the first trial that Rack was the prior user in Massachusetts, and since Rax did not challenge that finding in the first appeal, it became established as the law of the case and Rax forfeited the right to challenge it during the subsequent litigation of this controversy.*
 
 
 17
 Rax's second argument is that, regardless of prior use, it should have superior rights in Massachusetts because Massachusetts is the site of its "origin, home base, nerve center and center of control". Rax dubs this theory a "zone of im pansion" theory. Obviously, this argument should have been presented to the district court in the trial, and to us during the first appeal, for the reasons we have set forth above. However, lest semantic innovation pass for substance, we will discuss it briefly.
 
 
 18
 Trademark rights protect goodwill in trade. United Drug v. Rectanus Co., 248 U.S. 90, 97, 39 S.Ct. 48, 50, 63 L.Ed. 141 (1918). We have reiterated the legitimacy of the concern that subsequent trademark users not be allowed to trade on the preexisting good will of others. 635 F.2d at 931. But we have also held that this concern is to be vindicated by attention to whether the subsequent user adopts its mark in good faith and to whether the prior user had established such a trade reputation among consumers in the local area that bad faith can be presumed. Id. at 930. A disembodied "zone of im pansion" doctrine has no more place in such an analytic framework than a disembodied "zone of ex pansion" doctrine. Although the situs of a company's headquarters may be relevant to showing bad faith or to showing that a reputation has been established among local consumers, it is far from conclusive. Indeed, it will usually be much less relevant than the proximity of the contested locality to the region in which actual use has been made.
 
 
 19
 The district court properly enjoined Rax from using the mark "Off the Rax" in Massachusetts, where Rack was the prior user.
 
 II. The Rack Appeal
 
 20
 Rack also argues two points on appeal, both relating to the trial court's refusal to impose a remedy beyond an injunction that forever denied Rax the right to use the mark "Off the Rax" in Massachusetts. Rack first argues that it was entitled to receive any profits Rax may have earned through use of the mark in Massachusetts, trebled. It also argues that it was entitled to recover costs and attorneys' fees.
 
 
 21
 The district court quite properly denied Rack's request for an accounting for profits. The two companies do not compete directly for business (Rack sells men's clothing, Rax sells women's), and Rack offered no proof of actual damages. Under these circumstances, an accounting for profits is not authorized, either by the Lanham Act or by Massachusetts common law. Quabaug Rubber Co. v. Fabiano Shoe Co., Inc., 567 F.2d 154, 161-62 (1st Cir. 1977).
 
 
 22
 The district court also quite properly denied Rack's request for attorneys' fees. Rack argues that Rax's infringement was knowing, willful, intentional, and malicious, and that it is therefore entitled to recover under the Lanham Act and under Massachusetts law, both of which allegedly authorize an award of attorneys' fees in "exceptional cases". Whether or not attorneys' fees could be awarded in an exceptional case, the district court correctly held that this is not such a case. Indeed, it was close enough that at one stage in the litigation it appeared that Rax would prevail.
 
 
 23
 The judgment below is affirmed.
 
 
 
 *
 Our rule here complements the principle that an appellant who has two possible grounds for appeal and presents only one to the appellate court is precluded from raising the other ground later in the case, even if it is successful in its first appeal. See Richardson v. Communication Workers of America, 486 F.2d 801 (8th Cir. 1973)
 Our holding is limited to the failure's consequences for the law of the case; we need not analyze its collateral estoppel effects, which may depend on whether the lower court's holding is affirmed or reversed.