SPAN–DECK, INC., Plaintiff,

v.

FABCON, INCORPORATED and Rauenhorst Corporation, Defendants.

Civ. No. 4–73–535.

United States District Court,
D. Minnesota,
Fourth Division.

March 3, 1983.

John M. Mason, Minneapolis, Minn., for plaintiff.

Lawrence C. Brown, John D. Shively and Robert O. Vidas, Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

RENNER, District Judge.

This matter comes before the court on defendant Rauenhorst's motion for judgment of dismissal. A hearing on the motion and a pretrial conference were held on February 17, 1983.

### I.

### INTRODUCTION

This case comes again before the court by virtue of the order of remand issued in *Span-Deck, Inc. v. Fab-Con, Inc.,* 677 F.2d 1237 (8th Cir.1982). The parties vigorously dispute both the scope of the issues remaining to be tried and the propriety of requiring Rauenhorst to continue as defendant in light of the Court of Appeal's opinion. The defendants also request that the court issue a pretrial order delineating the issues to be retried. The court will include a definition of issues to be retried where necessary and appropriate in this opinion. Before reaching the substance of Rauenhorst's motion, however, a brief recapitulation of the tortuous history of the case [1] is necessary.

A. *The District Court Proceedings*

Span-Deck commenced this action against Rauenhorst and Fabcon, a wholly-owned subsidiary of Rauenhorst, in November

---

1. A comprehensive statement of facts may be    found in *Span-Deck,* 677 F.2d at 1238–40.

1973. The complaint alleged five theories of liability against Fabcon. In Count I, Span-Deck alleged that Fabcon had breached a franchise agreement entered into between the parties in October 1970 by continuing to use Span-Deck equipment, trade secrets and know-how in the manufacture of concrete planks and by failing to recognize the validity of or pay royalties due under the agreement. In Count III, Span-Deck alleged misappropriation of trade secrets and know-how; in Counts IV and V, trademark infringement; and in Counts VI and VII, infringement of two patents which had been obtained by Span-Deck, the "Mitchell" and "Kinnard" patents.

Against Rauenhorst, the complaint alleged two theories of liability. In Count II, Span-Deck alleged that Rauenhorst had tortiously induced Fabcon's breach of contract. In all other counts, Span-Deck alleged that Rauenhorst was Fabcon's alter ego and thus vicariously liable for Fabcon's actions.

Span-Deck sought damages and a permanent injunction for each of its claims. Fabcon, in turn, asserted a counterclaim seeking a declaratory judgment that the franchise agreement was unenforceable due to failure of consideration because the patents were invalid.

## B. *The District Court Proceedings*

The case was tried to a jury before this court from November 17, 1980 through February 13, 1981. Prior to trial, Chief Judge Lord had entered partial summary judgment for Fabcon and Rauenhorst on the portion of Count III alleging misappropriation of know-how. Also, the trademark infringement claims were withdrawn by plaintiff before the case was submitted to the jury.

After a lengthy deliberation, the jury returned answers to the twenty-two special verdict questions. It found that the franchise contract had been supported by both patent and non-patent consideration; that Fabcon had breached the contract; and that it was liable for $1,500,000 in compensatory damages. The jury also found that Rauenhorst was not Fabcon's alter ego;

that it had induced Fabcon to breach the franchise contract; and that it was liable for $2,000,000 in punitive damages. On the trade secrets claim, the jury found that Fabcon had used Span-Deck's trade secrets and assessed $375,000 compensatory and $400,000 punitive damages. Finally, the jury found that the patents were valid and that Fabcon had infringed them.

The court entered judgment on the contract and tortious inducement claims, Counts I and II, in the amounts of $1,500,000 in compensatory damages against Fabcon, and $2,000,000 in punitive damages against Rauenhorst. The counterclaim was dismissed.

All parties filed post-judgment motions. Fabcon and Rauenhorst made motions for judgment n.o.v. or for a new trial in which they urged that the patents were invalid and that their actions were justified under *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969). They also objected to the jury's liability and damage findings as to Span-Deck's trade secrets claim. Span-Deck moved to alter the initial judgment to impose joint liability upon Rauenhorst for the $1,500,000 compensatory damage award.

By Order and Memorandum dated July 21, 1981, the court held, as a matter of law, that the "Kinnard" patent had not been infringed, but denied all other relief requested by defendants. It granted Span-Deck's motion to alter the initial judgment to impose joint liability upon Rauenhorst for $1,500,000 compensatory damages for breach of contract by Fabcon.

## C. *The Court of Appeals Decision*

In *Span-Deck, Inc. v. Fabcon, Inc.,* 677 F.2d 1237 (8th Cir.1982), the Court of Appeals held that the "Mitchell" patent was invalid as a matter of law and that, therefore, Fabcon's cessation of royalty payments was justified under *Lear,* 395 U.S. at 653, 89 S.Ct. at 1902, at least as of April 1973 when Gerald Rauenhorst, president of defendant Rauenhorst, asserted that the Mitchell and Kinnard patents were invalid.

In *Lear* the Supreme Court held that federal patent policy allows a licensee to discontinue royalty payments while challenging patent validity. *Id.* at 673–74, 89 S.Ct. at 1912–1913. The Eighth Circuit held that *Lear* was controlling even though the royalty here also included an unapportioned amount for trade secrets and other nonpatent consideration. The court reasoned that here, unlike *Aronson v. Quick Point Pencil,* 440 U.S. 257, 99 S.Ct. 1096, 59 L.Ed.2d 296 (1979), the parties had not agreed that a reduced royalty rate would apply if the patents were found invalid. Since both patents were used as leverage to negotiate the royalty, the entire royalty amount could be withheld during a challenge to their validity. *Span-Deck,* 677 F.2d at 1247.

Because Fabcon's actions were authorized under *Lear* at least as of the time of Rauenhorst's involvement in April 1973, the court concluded that Rauenhorst was justified in urging Fabcon to discontinue royalty payments. 677 F.2d at 1246. The court then said:

> Because Rauenhorst established justification or 'the presence of exceptional circumstances which show that no tort was in fact committed and lawful excuse which excludes actual and legal malice,' *Johnson v. Radde,* 293 Minn. 409, 196 N.W.2d 478, 480 (1972), the district court should either have directed a verdict for Rauenhorst on the tortious inducement claim or entered a judgment notwithstanding the verdict.

*Id.*

In reaching this holding, the court relied on *St. Regis Paper Co. v. Royal Industries,* 552 F.2d 309 (9th Cir.1977) *cert. denied,* 434 U.S. 996, 98 S.Ct. 633, 54 L.Ed.2d 490 (1977), where the Ninth Circuit held an entire unapportioned royalty to be unenforceable upon a finding that the patent was invalid, but held that the licensor was still entitled to compensation for its know-how. The *Span-Deck* court noted that the court in *St. Regis* had discussed damages in terms of the reasonable value of the know-how "premised ostensibly on grounds of unjust enrichment. *See Dusenka v. Dusenka,* 221

Minn. 234, 21 N.W.2d 528, 530–31 (1946)." *Id.* 677 F.2d at 1247.

The Span-Deck court concluded, finally, that "it is apparent that the trial court erred in allowing the jury to assess compensatory damages based on unpaid royalties for the period after October 7, 1975 [the date of contract termination]." *Id.* at 1249. It said further that:

> Although the jury found that Fabcon continued to use Span-Deck's trade secrets acquired as a result of a confidential relationship with Span-Deck and although a reasonable royalty is one fair method of computing damages in such a case . . ., it does not follow that the jury would have necessarily computed the same damages had it treated the contract as terminated as of October 1975. In sum, a remand for determination of compensatory damages based on the value of nonpatent consideration received by Fabcon during the period from cessation of royalties until the October 1975 contract termination and damages for the misappropriation of trade secrets after contract termination is in order.

*Id.*

The court then ordered, *id:*

> [T]he judgment against Fabcon for breach of contract is reversed; however, because the jury found that Fabcon received nonpatent consideration, the cause is remanded for a determination of the value of nonpatent rights received by Fabcon from the time Fabcon ceased payment of royalties until termination of the contract on October 6, 1975. In addition, a determination of damages for misappropriation of trade secrets after the contract termination is ordered.

## II

## DISCUSSION

Rauenhorst moves for an order that final judgment be entered dismissing it from the action "based upon the Judgment of the Court of Appeals, the Special Verdict form, the court's instructions to the jury, and all of the files, records and proceedings

herein." Span-Deck points out that Rauenhorst has failed to state the rule upon which its motion is based. This failure does not require, however, that the motion be denied.

Fed.R.Civ.P. 7(b) provides that a motion should state with particularity the grounds upon which it is based, but, as numerous courts have held, this rule need not be followed slavishly. In *McGarr v. Hayford,* 52 F.R.D. 219 (S.D.Cal.1971), for example, the court held that a motion need not be denied for failure to comply with Rule 7(b) if the court can comprehend the basis of the motion and deal fairly with it. Similarly, in *King v. Mordowanec,* 46 F.R.D. 474 (D.R.I. 1969), the court held that the purpose of the rule was fulfilled where the grounds for the motion had been discussed at oral argument and in an in chambers discussion. The court said, "To require a pro forma redrafting of [the] motion is, in the circumstances, an unnecessary act." *Id.* at 477.

The *Mordowanec* court's common sense approach is appropriate here. Although Rauenhorst has failed to state the rule upon which its motion is based, the grounds for the motion have been extensively discussed both in the parties' briefs and at oral argument. Essentially, Rauenhorst argues that it should be dismissed because all possible theories of liability pleaded against it have been disposed of either by the Eighth Circuit ruling and/or the jury's special verdict findings.

The court will treat the motion as one for summary judgment. Thus, it may not be granted unless, based upon the undisputed facts viewed in the light most favorable to Span-Deck, Rauenhorst has "established [its] right to a judgment with such clarity as to leave no room for controversy." *Snell v. United States,* 680 F.2d 545 (8th Cir. 1982). The court is convinced that this stringent standard has here been met and that summary judgment is appropriate.

Span-Deck contends that two theories of liability remain viable despite the Eighth Circuit opinion and the jury's special verdict findings.[2] First, it maintains that a claim still exists against Rauenhorst for misappropriation of trade secrets. Second, it argues that a claim other than the inducement of withholding royalty payments still exists against Rauenhorst for tortious inducement of contract breaches by Fabcon.

### A. Misappropriation of Trade Secrets

■ As Span-Deck points out, the complaint alleges in two paragraphs of Count III that Rauenhorst is involved in trade secret misappropriation as a joint tortfeasor. In paragraph 21, the complaint states that "defendants, as a result of entering into THE AGREEMENT and otherwise, gained access to and received from plaintiff substantial SPAN–DECK Trade Secrets and know-how." In paragraph 22, the complaint alleges that "defendants, jointly and severally . . . have misappropriated and made unauthorized use of the SPAN–DECK Trade Secrets and Know-how. . . ." The sole possible premise for a finding that Rauenhorst entered into an agreement with Span-Deck as alleged in paragraph 21, and the only one advanced at trial is, however, that Rauenhorst is the alter ego of Fabcon, as alleged in Count I of the complaint.

In answer to Special Verdict Question No. 5 the jury found that Rauenhorst was not the alter ego of Fabcon. Span-Deck does not argue that this finding is no longer valid. Thus, its claim that Rauenhorst should be liable as a joint tortfeasor for misappropriation of trade secrets must fail as a matter of law.

### B. Tortious Inducement of Breach of Contract

Span-Deck also asserts that Fabcon committed breaches of the franchise contract at the urging of Rauenhorst which were not held justified under the *Lear* rationale. Specifically, Span-Deck now alleges that

---

**2.** In its Memorandum in Opposition to Defendant's motion, Span-Deck asserts cryptically that "it can be seen" from reviewing its list of issues that more than two claims remain against Rauenhorst, but the court has been unable to find more than two.

Rauenhorst has caused Fabcon not to perform the following contract obligations:

(1) terminate production of Span-Deck plank and use of Span-Deck's trade secrets after contract termination;

(2) make available to Span-Deck improvements in the franchised machinery and processes;

(3) refer to its product only under the Span-Deck name.

None of these issues is properly before the court for retrial.

■ As to the first breach of contract issue, Span-Deck is, quite understandably, hedging its bets. It contends that the continued production of Span-Deck plank and use of Span-Deck trade secrets after contract termination is a tort, but, in the alternative, if such continued use is a breach of contract, then Rauenhorst should be held liable for tortious inducement of that breach. Since the court agrees with Span-Deck that the use of trade secrets after contract termination is a tort, this first issue cannot support Span-Deck's argument that Rauenhorst should remain as a defendant.

■ Both the Eighth Circuit decision and the weight of case law support the court's conclusion that post-contract use of trade secrets by a franchisee creates a tort claim, rather than a claim for breach of contract. The Eighth Circuit separately defined Span-Deck's remedies for the pre- and post-contract termination use of its trade secrets by Fabcon. The pre-contract termination damages were to be based on the "value of nonpatent rights received by Fabcon"—an unjust enrichment theory. 677 F.2d at 1249. The post-contract termination claim was unambiguously described as "misappropriation of trade secrets"—a tort theory. *Id.* This description constitutes the law of the case, which this court is not free to disregard. *See generally* 1B Moore's Federal Practice, ¶ .404[10] (1982). (When used to describe the duty of a lower court to follow decision by a higher court, the term "law of the case" refers to everything decided, whether expressly or by implication.)

The Eighth Circuit's implicit conclusion that the post-contract use of trade secrets constitutes a tort, rather than a breach of contract, is supported by Minnesota law. In *Josten's Inc. v. National Computer Systems,* 318 N.W.2d 691 (Minn.1982), it was held that to succeed on a claim for misappropriation of trade secrets the plaintiff must prove: (1) the existence of a trade secret; (2) that it was acquired as a result of a confidential relationship; and (3) that the defendant has used and disclosed the trade secret. *Id.* at 701.

As numerous courts have recognized, a franchisor-franchisee relationship is a confidential one which can give rise to an action for misappropriation of trade secrets where a franchisee continues to use secret information after contract termination. In *Venn v. Goedert,* 319 F.2d 812 (8th Cir.1963) (applying Minnesota law), for example, the owner of a cookie franchise operation sued a former franchisee for misappropriation of trade secrets through the continued use of cookie recipes after contract termination. Although the court affirmed the trial court's finding that the recipes were not trade secrets, it said, "It is clear that defendants acquired the recipes and techniques as a result of a confidential relationship." *Id.* at 815.

Similarly, in *Kewanee Oil Co. v. Bieron Corp.,* 416 U.S. 470, 474, 475, 94 S.Ct. 1879, 1882, 1883, 40 L.Ed.2d 315 (1973), the Supreme Court stated:

Often the recipient of confidential knowledge of the subject of a trade secret is a licensee of its holder . . . The protection accorded the trade secret holder is against the disclosure or unauthorized use of the trade secret by those to whom the secret has been confided under the express or implied restriction of nondisclosure or nonuse.

*Accord Electronic Data Systems Corporation v. Sigma System Corporation,* 500 F.2d 241, 245–46 (5th Cir.1974), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1975) (upholding award of compensatory and punitive damages for post-contract use of secret computer manufacturing informa-

tion); *Cf. My Pie Intern. v. Debould, Inc.,* 687 F.2d 919, 921 (7th Cir.1982) (Recognizing availability of tort action for misappropriation of trade secrets where ex-franchisee continues use of trade secrets after cessation of franchise agreement.)

■ As the above cases illustrate, a party seeking damages for post-contract use of confidential information acquired during the contract period is not relegated to a breach of contract remedy. *Aktiebolaget Bofors v. United States,* 194 F.2d 145 (D.C.Cir.1951) and other cases cited by defendants do not require a contrary conclusion. In *Aktiebolaget,* plaintiff was a licensor which alleged that the United States had misappropriated its trade secrets through use of its property in excess of that permitted under the license agreement. Since the agreement was still in effect, the court held that the plaintiff's sole remedy was for breach of contract. *Id.* at 146. Here, the franchise agreement was terminated as of October 6, 1975. Span-Deck has no contract remedy for use of its trade secrets after that date. The agreements' post-contract provision is but a nullity; it can neither create a contract remedy where no contract exists nor destroy a tort remedy which would have been available in its absence.

■ In the retrial, then, the Eighth Circuit's mandate requires that Span-Deck's claim for pre-termination use of trade secrets and other nonpatent consideration, if any, proceed on an unjust enrichment theory. Its claim for use of trade secrets after October 6, 1975 must proceed on a tort theory. Span-Deck may assert a claim for punitive damages only with respect to use of trade secrets after October 6, 1975.[3] As discussed above, Rauenhorst is not a proper defendant as to either of these claims.

The Court of Appeals' mandate also requires that the jury's special verdict findings on the trade secrets question be given continued effect on retrial. In answer to Special Verdict Questions 7, 8 and 9, the jury found: (a) that Span-Deck had trade secrets in 1970; (b) that Fabcon acquired and used Span-Deck's trade secrets as a result of a confidential relationship with Span-Deck; and (c) that Fabcon had not discontinued its use of Span-Deck trade secrets. Despite defendants' vigorous arguments to the contrary, these findings may not be reexamined.

■ Defendants argue that the findings have no current legal effect because they were extinguished on July 22, 1981 when this court entered judgment on the breach of contract claim. Defendants are correct that, under the rule of merger, a valid and final judgment in an action extinguishes the plaintiff's claim in its entirety. See Restatement of the Law (Second) on Judgments 2d § 18 (1980). This rule is entirely inapposite here, however, since the Eighth Circuit reversed the judgment entered by this court. Thus, the analysis must properly focus on the law of the case.

■ Under the law of the case doctrine a district court is bound by all matters within the compass of an appellate court's opinion on an earlier appeal. *Houghton v. McDonnell Douglas Corp.,* 627 F.2d 858, 865 (8th Cir.1980). Although this rule does not necessarily prevent litigation of issues on which the opinion is silent, the rule does prevent relitigation of issues which were either "expressly or impliedly disposed of on appeal." *Id. quoting Thornton v. Carter,* 109 F.2d 316, 319–20 (8th Cir.1940). *Accord Liberty Mutual Ins. v. E.E.O.C.,* 691 F.2d 438, 441 (9th Cir.1982). The district court must construe the appellate court's opinion in its entirety and "is without power to do anything which is contrary to either the letter or spirit of the mandate construed in the light of the opinion of [the appellate] court deciding the case." *Id.* 627 F.2d at 865. *See generally* 1B Moore's Federal Practice ¶ .404[10] (1982).

■ In light of this rule, the court is constrained to find that the jury's trade

---

**3.** The matter of injunctive relief will be reserved, as in the first trial, for post-trial determination by the court.

secrets findings must be given continued effect. The Eighth Circuit specifically remanded the case for a determination of the value of nonpatent rights used during the pre-termination period "because the jury found that Fabcon received nonpatent consideration." *Span-Deck,* 677 F.2d at 1249. The court also said, "In addition, a determination of damages for misappropriation of trade secrets after the contract termination is ordered." *Id.* This order leaves no room for a redetermination of either of the existence of trade secrets or Fabcon's continued post-contract use of them. To allow such a redetermination would be a flagrant violation of the mandate.

The law of the case doctrine is no less applicable here because the question involves the continued viability of jury special verdict findings. As the Fifth Circuit noted in *E.E.O.C. v. Longshoremen's Ass'n,* 623 F.2d 1054, 1059 (5th Cir.1980), "Under the 'law of the case' rule, the trial and appellate courts are bound by any findings of fact or conclusions of law made by the appellate court in a prior appeal of the case at issue.... [citation omitted]."

This principle is illustrated in *Raxton Corp. v. Anania Associates, Inc.,* 668 F.2d 622 (1st Cir.1982), a trademark infringement and unfair competition case on appeal to the First Circuit for the second time. In the first appeal, the court reversed the district court's decision that the plaintiff should prevail under the so-called "zone of natural business expansion doctrine," and remanded the case for consideration of the defendant's counterclaim. *Raxton Corp. v. Anania Assoc.,* 635 F.2d 924 (1st Cir.1980). On remand the court granted an injunction in favor of the defendant and plaintiff appealed. On the second appeal, the plaintiff challenged the district court's earlier finding that plaintiff had begun using its name in the area after the defendant. The court noted that it had accepted this finding as a "given" in the earlier opinion, that plaintiff had not challenged it either in the district court or at the time of the first appeal, and could not challenge it then. 668 F.2d at 624.

In response to the plaintiff's argument that the finding had not been a necessary finding and should not be given conclusive effect, the *Raxton* court said:

> [The] court could have justified its conclusion without discussing the issue. But that fact is irrelevant here, where we are concerned not with estoppel in collateral proceedings but with waiver of an issue during the course of a single lawsuit. For such purposes, the question is not what the trial court had to find, but what it did find.

668 F.2d at 624. The court concluded that the plaintiff could and should have challenged the adverse finding on appeal even though it was the successful party. Having failed to do so, plaintiff was held to have waived the issue and the unchallenged factual finding became the law of the case.

In a footnote, the court commented that the rule which it had applied complements the principle "that an appellant who has two possible grounds for appeal and presents only one to the appellate court is precluded from raising the other ground later in the case even if it is successful in its first appeal." *Id.,* n. at 625. As the *Raxton* court noted, this rule was applied in *Richardson v. Communications Workers of Amer., AFL–CIO,* 486 F.2d 801 (8th Cir. 1973). In *Richardson,* two defendant unions attempted to raise at the time of the second trial and appeal a claim that they should not be held jointly liable. The court held that such a belated attempt should be barred under the law of the case doctrine, saying, "In our prior opinion ordering a new trial on damages we discussed the unions as a single party since no claim as to their having any separate interests was raised on appeal." *Id.* at 804.

The rationale of the *Raxton* and *Richardson* cases applies here. Since defendants failed to pursue their objections to the trade secrets findings on appeal, the Eighth Circuit accepted them as a "given" and remanded for a determination of damages only. The findings are therefore the law of the case and may not be relitigated.

Several courts which have considered the question of the viability of the jury verdict findings in post-remand proceedings have used a res judicata analysis to conclude that the findings should be given continued validity. In *Continental TV, Inc. v. GTE Sylvania, Inc.,* 461 F.Supp. 1046 (N.D.Cal.1978), for example, plaintiff recovered damages at the original trial. Defendants appealed from the judgment, but plaintiffs filed no appeal even though the jury had made special verdict findings adverse to it. The court of appeals reversed, but on remand the district court held that plaintiff was bound by the adverse findings:

> Failure to appeal the adverse portions of a jury verdict when such a right exists, establishes those findings on remand as *res judicata. Green v. American Tobacco Co.,* 325 F.2d 673, 678 (5th Cir.1963), *cert. denied,* 377 U.S. 943 [84 S.Ct. 1349, 12 L.Ed.2d 306] (1964). Such a conclusion not only comports with the principles of judicial finality, but also gives effect to the trial court's use of submitting special interrogatories to the jury pursuant to Fed.R.Civ.P. 49(b).

*Id.* at 1051. This holding was recently affirmed by the Ninth Circuit. *See Continental TV v. GTE Sylvania, Inc.,* 694 F.2d 1132, 1136 at n. 6 (9th Cir.1982).

■ Here, just as in *Continental,* defendants could have appealed from the jury's special verdict findings but failed to do so. It cannot now challenge them for purposes of retrial. *Accord Pritchard v. Liggett and Myers Tobacco Company,* 370 F.2d 95 (3d Cir.1966) (Finding for plaintiff given preclusive effect on remand even though it had not been essential to judgment because judgment appealed from was for defendant.)

The Restatement of the Law (Second) on Judgments § 13 (1982) supports the view implicit in the above cases that for purposes of issue preclusion, as distinguished from merger or bar, the requirement of finality is relaxed. *See also* Comment G, and Illus. # 3. As Judge Friendly said in *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir.1961) *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1982):

> Whether a judgment not "final" in the sense of 28 U.S.C. § 1291, ought nevertheless be considered "final" in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e. that it was not avowedly tentative), the adequacy of the hearing and the opportunity for review. "Finality" in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.

*Quoted* in *Miller Brewing Co. v. Jos. Schlitz Brewing Co.,* 605 F.2d 990 (7th Cir.1979) (giving preclusive effect to a determination in another case that the term "lite" was a generic term, even though the ruling was not final, because it had been made on appeal from an order of preliminary injunction.)

Application of these factors requires that the special verdict findings on trade secrets be given preclusive effect. The jury's determination was carefully considered; it was the product of a week's deliberation at the end of a 10 week trial. Defendants challenged the special verdict findings in both their motions for judgment notwithstanding the verdict and for a new trial. They also included the findings in their assignment of errors on appeal, but failed to argue them. No good reason exists for permitting these issues to be relitigated. Indeed, special verdicts would serve little purpose if they were given no effect on remand. *See Mueller v. Hubbard Milling Co.,* 573 F.2d 1029, 1038 n. 13 (8th Cir.1978).

■ The law of the case doctrine also mandates the conclusion that Span-Deck is now foreclosed from asserting for the first time on retrial that Fabcon breached the franchise agreement by manufacturing products under its own name and failing to make available to Span-Deck improvements in the machinery and processes franchised. The Court of Appeals held that "because Rauenhorst established justification . . . the

district court should either have directed a verdict for Rauenhorst on the tortious inducement claim or entered a judgment notwithstanding the verdict." 677 F.2d at 1246. Implicit in this holding is the premise that no other breach of contract claims remained for consideration.

The court is also doubtful that these claims are within the scope of the pleadings, since paragraphs 9 and 10 of Count I, the breach of contract claim, contain no mention of these newly asserted theories. Even if the theories could be found to be within the purview of the complaint, however, they must be held to be waived. Span-Deck did not assert these claims in the original trial or on appeal and cannot do so now. *See Continental TV, Inc.,* 461 F.Supp. at 1051 (plaintiff cannot introduce new theory of liability on retrial of case after 13 years of litigation.)

In summary, no claims remain against Rauenhorst. The Court of Appeals ordered a retrial on two issues: (1) the value of nonpatent consideration received by Fabcon before contract termination; and (2) damages for misappropriation of trade secrets after contract termination. The pre-contract termination claim must proceed on an unjust enrichment theory. Since Rauenhorst was found not to be Fabcon's alter ego, it can have no liability on this claim. All breach of contract claims have, furthermore, been either resolved by the Court of Appeals or waived by Span-Deck. The post-contract damages must proceed on a tort theory, as to which punitive damages may be asserted. The jury's finding on the alter ego theory also precludes any possibility that Rauenhorst could have liability as a joint defendant on this claim.

Based upon the foregoing IT IS HEREBY ORDERED that defendant Rauenhorst's motion for summary judgment of dismissal is granted.