**ALESAYI BEVERAGE CORPORATION,**
**Plaintiff and Counterclaim**
**Defendant,**

v.

**CANADA DRY CORPORATION,**
**Defendant and Counterclaim**
**Plaintiff.**

No. 89 Civ. 7221 (VLB).

United States District Court,
S.D. New York.

Aug. 31, 1992.

Paul L. Perito, Paul, Hastings, Janofsky & Walker, Washington, D.C., for plaintiff.

John R. Bartels, Jr., Bartels & Feureisen, White Plains, N.Y., and Dennis P. Orr, Shearman & Sterling, New York City, for defendant.

MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

I

This litigation involves disputes concerning the implementation and termination of

an agreement for distribution in Saudi Arabia and neighboring countries of Canada Dry beverage products by plaintiff, a Saudi Arabian entity. Plaintiff complains of cancellation of the agreement, and defendant Canada Dry Corporation ("Canada Dry") has interposed thirteen (13) counterclaims which plaintiff has moved to dismiss. Canada Dry's counterclaims fall into two basic categories: breach of contract; and intellectual property infringement.

## BREACH OF CONTRACT COUNTERCLAIMS:

1. Direct breaches of contract—counts I, II, III and XIII

2. Unjust enrichment through breach of contract, which amounts to another claim of breach of contract and is treated as such—count IV

3. Negligent performance of contract, also in essence failure to perform under, and hence breach of, contract and also treated as such—counts V and VI

4. Declaratory judgment that the license agreement between the parties was breached and hence terminated—count VII

## INTELLECTUAL PROPERTY INFRINGEMENT COUNTERCLAIMS:

1. Trademark infringement under the Lanham Act—counts VIII and IX

2. Trade dress infringement (Lanham Act)—count X

3. Misappropriation/palming off—count XI

4. Dilution and injury to business reputation—Count XII

For the reasons outlined below, I deny plaintiff's application to dismiss Canada Dry's contract counterclaims, but I grant plaintiff's application to dismiss the intellectual property infringement counterclaims.

## II

■ Plaintiff is suing Canada Dry for improper termination of a contract between it and Canada Dry. The issue of whether plaintiff itself breached its contract with defendant Canada Dry cannot be avoided and concerns the same core events as the original complaint. Canada Dry's breach of contract counterclaims assert breaches of the contract between the parties both before and after termination and thus arise out of the same transactions or occurrences as the plaintiff's complaint and are compulsory counterclaims under Fed.R.Civ.P. 13(a). Moreover, it would be unjust to permit a plaintiff to charge a trading partner with breach and yet successfully to object to being charged in the same lawsuit with liability for its own breaches. Thus it would be appropriate to hear Canada Dry's contract counterclaims in this case even if they were treated as permissive, rather than as compulsory under Rule 13. It will not do for a court of the United States to function as a one-way street, allowing a party to assert claims arising in a foreign venue, while remitting its adversary to a forum in that foreign venue to assert closely related opposing claims.

That the same acts may also involve alleged intellectual property infringements does not affect their status as alleged breaches of contract. The contract prohibits the post-termination conduct asserted by Canada Dry. Article 4 of the agreement between the parties provides that "in the event that this agreement shall be terminated, [plaintiff] will not thereafter exercise any right granted to it hereunder and immediately discontinue use of any and all of [Canada Dry's] trademarks or trade names …"

Plaintiff argues that termination of the agreement automatically terminates this clause as well, even though the clause explicitly deals with post-termination events. Such an interpretation would make the quoted language surplusage, hardly a construction to be favored. Such a construction would impede commercial relationships by making it impossible for contracting parties to agree on permissible conduct after the end of a relationship; the result would be harmful to both parties to future agreements. Inability of a contracting party to bargain with a trading partner at arm's length for commitments governing future use of privileges granted by contract would tend to impede licensing of

intellectual and other properties and would hardly accord with the "sanctity of contractual arrangements," *Oreck Corp. v. Whirlpool Corp.,* 579 F.2d 126, 133 (2d Cir.) (en banc), *cert. denied,* 439 U.S. 946, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978).

Frequently, of course, the same conduct may violate intellectual property rights as well as contract provisions, making the distinction unimportant. See generally *Bowmar Instrument Corp. v. Continental Microsystems,* 497 F.Supp. 947 (S.D.N.Y. 1980); *Best Resume Service v. Care,* 602 F.Supp. 653, 656 (W.D.Pa.1985); *McDonald's Corp. v. Robert A. Makin, Inc.,* 653 F.Supp. 401, 404 (W.D.N.Y.1986); *Schneider, Hill & Spangler v. Cudmore,* 325 F.Supp. 173, 174–75 (D.Conn.1971).

*Span–Deck, Inc. v. Fabcon,* 570 F.Supp. 81, 86–87 (D.Minn.1983), cited by plaintiff, supports the view that contract language governs; there, post-termination use of a trade secret was deemed a tort, not a breach of contract, where no specific post-termination non-use clause was involved.

Several of the breach of contract counts in Canada Dry's contract counterclaims may overlap both in factual content and in remedy, but this is not a basis for dismissal since alternative pleadings are permissible, and duplicate recovery will not, in any event, be permitted.

### III

■ Canada Dry's intellectual property counterclaims are not appropriately heard in this case. New York choice of law rules in this diversity case, and it points the court toward foreign law where harmful events abroad are charged to be tortious. To hear such counterclaims, based entirely on conduct abroad without any specific allegation of actual impact on United States commerce, would entail misapplication of the statutes involved: they were never intended to control trade in other countries absent any definable impact in this country, nor to provide the application of statutory legal fees where no convincing reason for invoking them is provided. I note that Canada Dry's intellectual property counterclaims overlap substantially its contract counterclaims: if the intellectual property assertions could be pursued here, they would doubtless support almost identical relief (except that as to the intellectual property claims, applications for statutory legal fees might be made).

Almost all witnesses with respect to the intellectual property counterclaims reside in the Middle East. The defending party on the counterclaims is located there. Allowing the counterclaims despite inconvenience would be appropriate only on the grounds that they are compulsory counterclaims—or that they are offsetting contractual claims based on the same relationship, which should be heard to permit the trier of facts to reach the proper evaluation of the conduct of opposing parties with respect to the same transaction. The breach of contract counterclaims already provide an appropriate and available level playing field, without opening the door to extraneous elements involved in the intellectual property claims such as impact on commerce, validity of the trademark and the like.

In appropriate cases, the Lanham Act in conjunction with 28 U.S.C. § 1331 provides an independent jurisdictional basis for federal judicial cognizance of claims (or counterclaims). But recognition of such claims where the facts and their definable impacts solely involve conduct abroad is not appropriate. Committing a court of the United States to deal with events concentrated abroad without defined impact in this country, where jurisdiction would be subject to invocation entirely apart from Fed.R.Civ.P. 13(a), would be a dubious exercise, see generally *Borden, Inc. v. Meiji Milk Products Co.,* 919 F.2d 822 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2259, 114 L.Ed.2d 712 (1991). Such a step would be especially inappropriate here, given the availability of the contract counterclaims to deal with the same factual allegations. The outer limits of potential Lanham Act jurisdiction need not be traced, compare Karmel, "The Second Circuit's Role in Expanding the SEC's Jurisdiction Abroad," 65 St. John's L.Rev. No. 3, at 743 (Summer

1991), because *forum non conveniens* makes such consideration unnecessary.

Given the business nature of the surviving opposing contract-related claims, and the inconvenience of trial of those claims involving inter-continental witnesses, further settlement efforts by the parties appear particularly appropriate. The parties are directed to consider use of an impartial umpire selected by name by both sides, direct negotiation between the principals with the consent of counsel, use of a United States Magistrate Judge, or other appropriate means of expediting settlement negotiations, and to report to the court within a reasonable time on their progress in that respect.

SO ORDERED.