CONTINENTAL T.V., INC., et al.,
Plaintiffs-Appellants,

v.

G.T.E. SYLVANIA INCORPORATED and
John P. Maguire & Co.,
Defendants-Appellees.

No. 79–4131.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1980.

Decided Sept. 28, 1982.

As Amended on Denial of Rehearing and
Rehearing En Banc Dec. 30, 1982.

Glenn E. Miller, Johnston, Miller & Giannini, San Jose, Cal., for plaintiffs-appellants.

M. Laurence Popofsky, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for defendants-appellees.

Before FLETCHER and BOOCHEVER, Circuit Judges, and EAST,* District Judge.

FLETCHER, Circuit Judge:

Continental T.V., Inc. (Continental) appeals from a summary judgment in favor of G.T.E. Sylvania Incorporated (Sylvania) and John P. Maguire & Co. (Maguire). Continental challenges Sylvania's requirement that its dealers sell Sylvania products only from approved locations. The district court found, as a matter of law, that the restriction was not unreasonable. We affirm.

## I

### FACTUAL BACKGROUND

This appeal involves the legality of a vertical restriction imposed by Sylvania, a manufacturer of television sets, on its retailers. The restriction requires Sylvania retailers to sell Sylvania products from authorized locations only. Sylvania imposed such a location restriction on Continental, a retailer.

Continental was the only approved dealer for Sylvania televisions in San Francisco until Sylvania, dissatisfied with sales in the area, authorized a second dealer for a location within a mile of one of Continental's San Francisco stores. Shortly thereafter Continental attempted to market Sylvania televisions from an outlet in Sacramento, California. Sylvania had authorized another retailer, Handy Andy, to sell its televisions from a Sacramento location, but refused to allow Continental to do so. Relations between Continental and Sylvania deteriorated generally, and Continental's credit line from Maguire, the company that provided financing to dealers for Sylvania products, was reduced drastically. Continental withheld payments owed Maguire, and shortly afterwards Sylvania terminated Continental's dealership.

## II

### PROCEDURAL HISTORY [1]

On October 12, 1965, Maguire sued Continental for the amounts owed it. Continental cross-claimed against Maguire and joined Sylvania as a defendant, suing both for damages caused by their alleged violations of section 1 of the Sherman Act, 15 U.S.C. § 1 (1976), and on other counts not relevant to this appeal. The trial to a jury lasted several weeks. Continental was allowed to present whatever evidence it chose in support of its section 1 claim. At the conclusion of the trial, the court, relying on *United States v. Arnold Schwinn & Co.,* 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967),[2] instructed the jury that an agreement to restrict the location of a retailer's outlets was a *per se* violation of section 1 of the Sherman Act. The jury returned a verdict for Continental on its claim that Sylvania had engaged in a contract, combination, or conspiracy in restraint of trade

---

* The Honorable William G. East, Senior District Judge for the District of Oregon, sitting by designation.

1. A more complete history of this lengthy litigation may be found in three earlier decisions in this case. *See Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 37–42, 97 S.Ct. 2549, 2551–2553, 53 L.Ed.2d 568 (1977); *GTE Sylvania, Inc. v. Continental T.V., Inc.,* 537 F.2d 980, 982–86 (9th Cir. 1976) (en banc); *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 461 F.Supp. 1046, 1047–48 (N.D. Cal. 1978).

2. In *Schwinn,* the Court considered a vertical restriction that applied to both sale and non-sale, *i.e.,* consignment transactions. 388 U.S. at 371, 87 S.Ct. at 1861. The Court held that the vertical restriction that applied to Schwinn's sale transaction was *per se* unlawful. *Id.* at 380, 87 S.Ct. at 1866. The Court also held that the vertical restriction that applied to Schwinn's non-sale transactions was reasonable. *Id.* at 381–82, 87 S.Ct. at 1866–1867. *See* section IV. B. 2 *infra.*

with respect to location restrictions.[3] Judgment was entered accordingly.

Sylvania, on appeal to this court, challenged the *per se* theory on which the case was submitted to the jury. We reversed, holding that the location restriction was factually distinguishable from the restrictions involved in *Schwinn,* making instruction on a *per se* theory incorrect. *GTE Sylvania, Inc. v. Continental T.V., Inc.,* 537 F.2d 980 (9th Cir. 1976) (en banc). The Supreme Court, although affirming this court, found Sylvania's restrictions on its dealers indistinguishable in principle from the restrictions challenged in *Schwinn. Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 46, 97 S.Ct. 2549, 2555, 53 L.Ed.2d 568 (1977). The Court reconsidered *Schwinn* and overruled its prior decision that vertical nonprice[4] restrictions are a *per se* violation of the antitrust laws. *Id.* at 57, 97 S.Ct. at 2561.

The Supreme Court remanded the case to the trial court for further proceedings on the issue of whether, applying a rule-of-reason analysis, Sylvania's location clause violated section 1 of the Sherman Act. Sylvania moved for summary judgment in the district court, contending that the undisputed facts in the entire trial record proved its policies were reasonable as a matter of law. The district court agreed and granted Sylvania's motion. *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 461 F.Supp. 1046 (N.D. Cal. 1978).

## III

## SUMMARY JUDGMENT

Continental appeals, arguing that summary judgment was inappropriate in this case. It argues that neither the Supreme Court nor this court found that Sylvania was entitled to judgment as a matter of law, but, to the contrary, found that Sylvania's "location practice" should be tested for legality under a rule-of-reason analysis. With this we agree. However, it does not follow necessarily that there must be a new trial. Although reasonableness is a question of fact, *Betaseed, Inc. v. U & I Inc.,* 681 F.2d 1203, 1228–29 (9th Cir.1982), it is perfectly appropriate for the district court to deny a new trial and to grant summary judgment based on the record before it provided: 1) The traditional tests for summary judgment are met;[5] and, (2) Continental has not been precluded from intro-

---

**3.** The jury found for the defendant on Continental's claim that Sylvania had conspired to restrain trade through a combination of location restrictions and price-fixing. The jury also found for Sylvania on Continental's state law claims.

**4.** The court explicitly distinguished between vertical price restrictions and vertical nonprice restrictions, indicating that a *per se* rule would continue to apply to the former. 433 U.S. at 51 n. 18, 97 S.Ct. at 2558 n. 18.

**5.** There must be no genuine disputes as to material facts and, on the undisputed facts, the movant must be entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.,* 677 F.2d 1301, 1305–06 (9th Cir. 1982); *Crown Beverage Co. v. Cerveceria Moctezuma, S.A.,* 663 F.2d 886, 888 (9th Cir. 1981); *United States v. First National Bank,* 652 F.2d 882, 887 (9th Cir. 1981); *Ramirez v. National Distillers & Chemical Corp.,* 586 F.2d 1315, 1318 (9th Cir. 1978).

Although the Supreme Court has indicated that summary judgment should be used sparingly in complex antitrust litigation, *Poller v.*

*Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), the Court has approved its use, *see First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–1593, 20 L.Ed.2d 569 (1968); *see also ALW Inc. v. United Air Lines, Inc.,* 510 F.2d 52, 54–55 (9th Cir. 1975).

We note also that summary judgment has been granted in this circuit on a record much more sparse than this one in a post-*Sylvania* case involving a claim of antitrust violation based on a location clause. *Golden Gate Acceptance Corp. v. General Motors Corp.,* 597 F.2d 676 (9th Cir. 1979). Because of the lengthy trial, the record before us is rather complete and entirely adequate to allow review of the district court's grant of summary judgment. Nevertheless, Sylvania's motion, which merely cited to the entire trial record, has not greatly aided us in our review. A court might well be warranted in rejecting such a shotgun approach, although we, and the district court, have elected to make the necessary review of the record in this case.

ducing evidence that would be admissible upon retrial to support its section 1 claim under a rule-of-reason analysis.[6]

■ We avoid many of Continental's contentions that the facts are in dispute and that the district court inappropriately relied on stylized summaries from the appellate decisions, by relying entirely on Continental's version of disputed facts (except facts found by the jury from which no appeal was taken). We dismiss Continental's argument that it could and should be allowed to adduce on retrial additional evidence to support its claim under a rule-of-reason analysis that was not introduced at the first trial because of the theory under which the case was tried. Continental was not limited by the trial court as to the evidence it adduced and, on remand, failed to make any showing of additional evidence it could present when confronted with Sylvania's summary judgment motion.

■ We proceed then to an analysis of whether the facts support a judgment for Sylvania as a matter of law. As an initial proposition we note that Continental, as plaintiff, bears the burden of proving that Sylvania's location clause was an unreasonable restraint on trade. Continental is wrong in its assertion that once it had proved the existence of a vertical restraint on trade—the location restriction in Sylvania's dealer contracts—the burden shifted to Sylvania to prove the restriction reasonable. The burden was Continental's to prove it unreasonable as part of its case-in-chief. *Cowley v. Braden Industries, Inc.,* 613 F.2d 751, 755 (9th Cir.), *cert. denied,* 446 U.S. 965, 100 S.Ct. 2942, 64 L.Ed.2d 824 (1980). *See Lektro Vend Corp. v. Vendo Corp.,* 660 F.2d 255, 269 n. 15 (7th Cir. 1981); *Gough v. Rossmoor Corp.,* 585 F.2d 381, 385 (9th Cir. 1978), *cert. denied,* 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979).

## IV
### RULE–OF–REASON ANALYSIS

■ The Supreme Court's opinion in *Sylvania* directs that Sylvania's vertical restraint be tested under the rule of reason. The traditional formulation of the rule was long ago set forth in *Chicago Board of Trade v. United States,* 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 683 (1918):

> The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained, are all relevant facts. This is not because a good intention will save an otherwise objectionable regulation or the reverse; but because knowledge of intent may help the court to interpret facts and to predict consequences.

The Supreme Court's opinion in *Sylvania* does nothing to alter this traditional analysis. *First Beverages, Inc. v. Royal Crown Cola Co.,* 612 F.2d 1164, 1170–71 (9th Cir.), *cert. denied,* 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). The inquiry remains "whether the restraint in question 'is one that promotes competition or one that suppresses competition.'" *Cowley v. Braden Industries, Inc.,* 613 F.2d at 754 (quoting *National Society of Professional Engineers v. United States,* 435 U.S. 679, 691, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978)).

■ The Court recognized that vertical restraints can promote competition and may be reasonable. *Sylvania,* 433 U.S. at 54–55,

---

**6.** We disregard Continental's contentions that it should be allowed to retry the case under a *per se* theory arguably applicable to resale price maintenance claims and horizontal allocation or boycott claims. As to the former, the special jury verdict on this claim, decided against Continental, was not appealed. As to the latter, Continental made no such allegations in its original case. It cannot do so now.

97 S.Ct. at 2559–2560.[7] It noted that promotion of interbrand competition "is the primary concern of antitrust law." *Id.* at 52 n. 19, 97 S.Ct. at 2558 n. 19. A vertical restraint may be reasonable if it is likely to promote interbrand competition without overly restricting intrabrand competition. *See Rice Tire Co. v. Michelin Tire Corp.,* 638 F.2d 15, 16 (4th Cir. 1981); *Daniels v. All Steel Equipment, Inc.,* 590 F.2d 111, 113 (5th Cir. 1979); *see also Muenster Butane, Inc. v. Stewart Co.,* 651 F.2d 292, 297–98 (5th Cir. 1981). We turn to a consideration of the effect of Sylvania's restraint on both intrabrand and interbrand competition.

### A. Effect on Intrabrand Competition

■ Sylvania's location clause, to the extent that it prevented Continental from establishing a retail outlet in Sacramento, would tend to harm intrabrand competition. As a result of the location clause, and the alleged conspiracy between Sylvania and

Handy Andy,[8] Handy Andy was the dominant outlet for Sylvania's goods in Sacramento. However, Sylvania could authorize another major dealer in the Sacramento area at any time. We are not confronted, therefore, with an airtight territorial restriction.[9]

Nor are we confronted with a situation where the restraint was adopted to protect a dealer from competition from price-cutters. *See Eiberger v. Sony Corp.,* 622 F.2d 1068 (2d Cir. 1980); *Cernuto v. United Cabinet Corp.,* 595 F.2d 164, 168–70 (3d Cir. 1979).[10] In *Eiberger,* for example, there was considerable evidence that the manufacturer imposed the restraint after complaints by its retailers that unauthorized dealers were engaged in price discounting. 622 F.2d at 1073–74, 1076–77. There is no evidence in the record to suggest that Sylvania adopted its location clause policy to prevent price discounting, and, indeed, the

---

**7.** The Supreme Court explained that vertical restraints can be used by an established manufacturer "to induce retailers to engage in promotional activities or to provide service and repair facilities necessary to the efficient marketing of its product." *Sylvania,* 433 U.S. at 55, 97 S.Ct. at 2560. The court went on to state that "[b]ecause of market imperfections such as the so-called 'free rider' effect, these services might not be provided by retailers in a purely competitive situation, despite the fact that each retailer's benefit would be greater if all provided the service than if none did." *Id.* See generally R. Posner, *Antitrust Law: An Economic Perspective* 147–166 (1976); Note, *Continental T.V., Inc. v. GTE Sylvania, Inc.— An Economic Approach to Antitrust Analysis,* 8 Mem. St. U.L. Rev. 565, 588–89 (1978).

**8.** For purposes of its summary judgment motion, Sylvania conceded that there was a conspiracy between it and Handy Andy at the time Continental requested permission to enter the Sacramento market.

**9.** An airtight restriction would exist if the location clause preventing Sylvania dealers from selling Sylvania goods from other than authorized locations were coupled with an exclusive franchise arrangement whereby Sylvania promised Handy Andy not to authorize any other dealer to sell in the Sacramento area. Or, indeed, other proscriptions would have been even more restrictive, such as limiting the competing products the Sylvania dealer could sell or limiting customers to residents of the territory. *See*

Zelek, Stern, and Dunfree, *A Rule of Reason Decision Model After Sylvania,* 68 Calif. L. Rev. 13, 34 (1980). Whether an airtight territorial restriction would be treated differently than a non-airtight restriction, is a question we need not decide. *See generally* Pitofsky, *The Sylvania Case: Antitrust Analysis of Non-Price Vertical Restrictions,* 78 Colum. L. Rev. 1, 34 (1978) (arguing that a *per se* rule should be applied to airtight territorial restrictions).

**10.** Both *Eiberger* and *Cernuto* involved the termination of distributorships by product manufacturers. Although vertical in form, these restraints were held unlawful primarily because they constituted a means for enforcing an essentially horizontal system of price control among distributors. The *Cernuto* court expressly grounded its imposition of antitrust liability on an observation that "although we are confronted here with an apparently vertical conspiracy, the principal impact of that conspiracy . . . is horizontal rather than vertical in nature." 595 F.2d at 167 n. 15. It reasoned that "if the action of a manufacturer or other supplier is taken at the discretion of its customer, the restraint becomes primarily horizontal in nature in that one customer is seeking to suppress its competition by utilizing the power of a common supplier." *Id.* at 168.

No similar elements of horizontal price-fixing appear in the present case, which we instead analyze under the more lenient test applied to purely vertical territorial restraints.

jury found against Continental on its price-fixing claim.

Although Sylvania's restraint harmed intrabrand competition to some extent, the restraint was neither overly restrictive [11] nor adopted to prevent price-discounting.

### B. Effect on Interbrand Competition

#### 1. Alleged negative effect

■ Continental alleges that Sylvania's restraint also adversely affected interbrand competition. Continental contends that it was unable to enter the Sacramento market unless it could sell Sylvania's products. Thus other television manufacturers whose products Continental also sold were denied a retail outlet in Sacramento.

Sylvania's location clause, however, did not prohibit Continental from selling another manufacturer's television sets in Sacramento. Continental could operate a store in Sacramento and compete with Handy Andy for retail sales in Sacramento by selling non-Sylvania products. No rule of antitrust law requires a manufacturer to permit a dealer to sell the manufacturer's product in a specific market simply because the dealer also handles competing manufacturers' products.[12] We find Continental's contentions in this regard without merit.

#### 2. Likely Beneficial Effect

■ To determine whether a vertical nonprice restraint benefits interbrand competition, courts must rely on inferences drawn from the assumed economic impact of a particular restraint given the market structure of the industry and the circumstances under which the restraint was adopted. *See generally* Pitofsky, *The Sylvania Case: Antitrust Analysis of Non-Price Vertical Restrictions,* 78 Colum. L. Rev. 1, 33 (1978). If after consideration of these factors the court concludes that a manufacturer's vertical restraint is likely to promote interbrand competition, it will generally consider the restraint reasonable. *See, e.g., United States v. Arnold Schwinn Co.,* 388 U.S. at 381–82, 87 S.Ct. at 1866–1867; *Red Diamond Supply, Inc. v. Liquid Carbonic Corp.,* 637 F.2d 1001, 1005 (5th Cir. 1981).

The Supreme Court has applied this market-structure approach in its consideration of a vertical restraint in a *non-sale* transaction under a rule-of-reason analysis. *See Schwinn,* 388 U.S. at 381–82, 87 S.Ct. at 1866–1867. The Court held the restraint reasonable because looking at the product market as a whole, the Court could not "conclude that Schwinn's franchise system with respect to products as to which it retains ownership and risk constitutes an unreasonable restraint of trade." *Id.* at 382, 87 S.Ct. at 1867.[13] The *Sylvania* Court

---

**11.** We do not require that a restriction be the least restrictive alternative available in order to be reasonable. Such a rule would place an unreasonable and impractical burden on a manufacturer desiring to impose some vertical restraint in order to promote its position vis a vis its competitors. The restraint adopted by Sylvania in this case, as noted by the Supreme Court, was "neither the least nor the most restrictive provision that it could have used." *Sylvania,* 433 U.S. at 58 n. 29, 97 S.Ct. at 2561 n. 29.

**12.** Although not dispositive, the exclusive dealership precedents, *see Sylvania,* 537 F.2d at 997 (and cases cited therein), support the proposition that it is not unreasonable for a manufacturer to refuse to allow a specific retailer to market the manufacturer's products. Continental argues that these precedents must be reconsidered in light of *Sylvania. See generally* Elias, *Dealer Termination or Exclusion, Intrabrand Competition and GTE Sylvania,* 29

Baylor L. Rev. 435 (1977). However, this court has continued to rely on the exclusive dealership precedents even after the *Sylvania* decision. *See Chandler Supply Co. v. GAF Corp.,* 650 F.2d 983, 989 (9th Cir. 1981); *Golden Gate Acceptance Corp. v. General Motors Corp.,* 597 F.2d at 678.

**13.** In reaching its conclusion the Court considered the following:

(1) that other competitive bicycles are available to distributors and retailers in the marketplace, and there is no showing that they are not in all respects reasonably interchangeable as articles of competitive commerce with the Schwinn product; (2) that Schwinn distributors and retailers handle other brands of bicycles as well as Schwinn's; (3) in the present posture of the case we cannot rule that the vertical restraints are unreasonable because of their intermixture with price fixing; and (4) we

recognized that there was no justification for applying different rules to sale and non-sale transactions. 433 U.S. at 57, 97 S.Ct. at 2561. Thus the Supreme Court's rule-of-reason analysis in *Schwinn,* although dealing with non-sale transactions, is equally applicable to the sale transactions between Sylvania and its dealers. *See* Altschuler, *Sylvania, Vertical Restraints and Dual Distribution,* 25 Antitrust Bull. 1, 36–37 (1980).

The Fifth Circuit recently applied a market-structure analysis to location restrictions imposed by a manufacturer on its dealers, concluding that the vertical restraints challenged by the plaintiff in that case were likely to improve competition. *Red Diamond Supply, Inc. v. Liquid Carbonic Corp.,* 637 F.2d 1001 (5th Cir. 1981).[14] The court found that the restraints did not affect interbrand competition because: (1) there were seven manufacturers in the industry; (2) there were ready substitutes for the products; and, (3) there was no proof of industry concentration. *Id.* at 1005–06. In fact, it found it likely, under the circumstances, that interbrand competition would be improved by the adoption of the restraint. *Id.* at 1006.

Applying a similar analysis to the instant case, we consider the television manufacturing industry at the time Sylvania adopted the location clause in question and at the time Sylvania enforced the restraint to prevent Continental from entering the Sacramento market to sell Sylvania television sets.[15] In both 1962 and 1965 there were other viable television manufacturers available to sell to any retailers, who wished to enter the Sacramento market, and their products were interchangeable with Sylvania's.

The precise restraints imposed by Sylvania and other manufacturers in the industry are also relevant to a determination of the effect Sylvania's location clause had on interbrand competition. *Red Diamond,* 637 F.2d at 1005–06. Sylvania did not prevent its retailers from handling competitor's products, and there is no evidence that any other manufacturer imposed such a restraint. A final consideration is that Sylvania did not adopt its distributorship arrangement at the request of other retailers. *See Eiberger v. Sony Corp.,* 622 F.2d at 1072–73, 1077. Rather, it independently determined that the restraint was necessary for Sylvania to remain competitive in the television industry.[16]

## V

## CONCLUSION

The district court concluded as a matter of law that Sylvania's location clause was

---

cannot disagree with the findings of the trial court that competition made necessary the challenged program; that it was justified by, and went no further than required by, competitive pressures; and that its net effect is to preserve and not to damage competition in the bicycle market. *Schwinn,* 338 U.S. at 381–82, 87 S.Ct. at 1866–1867 (footnote omitted).

**14.** Although the court was reviewing a trial court's decision to award judgment notwithstanding the verdict on a *state* antitrust claim, the court applied federal antitrust principles. *Red Diamond Supply, Inc.,* 637 F.2d at 1003.

**15.** Sylvania adopted a new marketing policy in 1962, which included use of the location clause arrangement. Continental attempted to enter the Sacramento market and was terminated by Sylvania in 1965. There is nothing in the record indicating that the structure of the television manufacturing industry, as opposed to the demand for television sets, changed between 1962 and 1965.

**16.** We do not wish to suggest that the purpose of a manufacturer in adopting a vertical restraint is dispositive. *Cf. Borger v. Yamaha International Corp.,* 625 F.2d 390, 397 n. 4 (2d Cir. 1980) (indicating that absent evidence of anti-competitive effect resulting from adoption of a vertical restraint, evidence of an anti-competitive purpose in adopting the restraint would not be sufficient). Obviously, evidence of the reasons why a restraint was adopted is likely to be self-serving. *See* Pitofsky, *supra,* note 9, at 35 ("The primary problem with evidence of purpose—to put the matter bluntly—is that in modern antitrust cases, such evidence will often reflect what counsel advise businessmen their purpose should have been."). Nevertheless, where, as here, Sylvania did not adopt the restraint to eliminate price discounters, and was struggling to increase its market share, we can assume that Sylvania thought adoption of the restraint was reasonably necessary to promote its competition with other brands.

not an unreasonable restraint on trade. We agree. In fact, Sylvania's restraint appears reasonable. The restraint was likely to promote interbrand competition given the market structure in the television manufacturing industry; the use of a location clause was one of the less restrictive methods Sylvania might have used; and the restraint was not adopted for the purpose of protecting its dealers from price-cutters. We affirm the district court's grant of summary judgment.

AFFIRMED.