# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 17, 2010

Lyle W. Cayce
Clerk

No. 09-40506

PSKS, INC., Doing Business as Kay's Kloset . . . . Kay's Shoes,

Plaintiff-Appellant,

versus

LEEGIN CREATIVE LEATHER PRODUCTS, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Texas

Before SMITH, GARZA, and CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge.

PSKS, Inc. ("PSKS"), sued for alleged violations of §1 of the Sherman Act and obtained a substantial judgment. This court affirmed. *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 171 F. App'x 464 (5th Cir. 2006). The Supreme Court reversed, overruling *Dr. Miles Med. Co. v. John D. Park & Sons Co.*, 220

No. 09-40506

U.S. 373 (1911), and holding that vertical price restraints, like vertical nonprice restraints, often have procompetitive justifications and should be judged under the rule of reason. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.,* 551 U.S. 877 (2007) ("*Leegin*"). On remand, we further remanded to the district court for proceedings in light of the Supreme Court's opinion. *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 498 F.3d 486 (5th Cir. 2007) (per curiam). The district court granted defendant's motion to dismiss on the merits. *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, No. 2:03-CV-107, 2009 WL 938561 (E.D. Tex. Apr. 6, 2009). We affirm.

I.

A.  Factual Background.

Leegin Creative Leather Products, Inc. ("Leegin"), manufactures and distributes handbags, belts, jewelry, and other products under the "Brighton" brand. PSKS operated Kay's Kloset, a retail fashion and accessories store in Lewisville, Texas, that sold Brighton products and goods from other manufacturers to consumers in the greater Dallas area.

Leegin utilizes a "dual distribution system" for its Brighton products. It distributes Brighton goods at the wholesale level to independent retailers through periodic trade shows. It also owns and controls over one hundred Brighton retail stores. The company thus is both manufacturer and retailer.

To harmonize and control the price of Brighton goods, Leegin imposed a resale price maintenance policy. PSKS violated that policy by offering Brighton products at a discount through Kay's Kloset. When PSKS refused to stop discounting Brighton goods, Leegin ceased to sell Brighton goods to it.

PSKS sued Leegin, alleging that it had entered into vertical resale price maintenance ("RPM") agreements. The jury awarded $3,975,000 to PSKS, and this court affirmed pursuant to *Dr. Miles*. *PSKS, Inc. v. Leegin Creative Leather*

*Prods., Inc.,* 171 F. App'x 464 (5th Cir. 2006).

### B.  The Supreme Court's Decision.

The Supreme Court granted certiorari  to reexamine the *per se* rule of *Dr. Miles. Leegin,* 551 U.S. at 881.  The Court recognized that the "economics litera-ture is replete with procompetitive justifications for a manufacturer's use of resale price maintenance." *Id.* at 889.  It noted that the *per se* rule applies only to restraints that exhibit "manifestly anticompetitive effects" and lack any re-deeming virtue. *Id.* at 886.  It then held that the *per se* rule is no longer appro-priate to RPM arrangements, overruling *Dr. Miles. Id.* at 907.  Instead, vertical price restraints, like vertical nonprice restraints, must be judged under the rule of reason. *Id.*

The Court reasoned that RPM arrangements can have important pro-competitive effects, such as encouraging retailers to invest in services and pro-motions and eliminating free riding by discounting retailers. *Id.* at 890-91.  The Court nevertheless acknowledged the possible anticompetitive justifications of a RPM regime.  Such arrangements can facilitate a manufacturer cartel or a car-tel at the retail level. *Id.* at 892-93.  In the latter instance, a group of retailers could collude to fix prices to consumers and then convince the manufacturer to aid that unlawful arrangement. A dominant retailer or manufacturer, similarly, could abuse RPM to its advantage. *Id.* at 893.  A dominant retailer with an ex-tensive distribution network, for instance, might request RPM to build a moat against competition, and manufacturers might feel compelled to comply in order to access that distribution network. *Id.* at 893-94 (citing *Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 937-38 (7th Cir. 2000)).

The opinion addressed the common criticism, raised again by PSKS and *amicus* in this appeal, that the rule of reason is tantamount to a rule of *per se* legality. *Id.* at 897-98.  The Court overruled *Dr. Miles* and adopted the rule of

reason precisely because that standard allows lower courts to weed out anticompetitive RPM without subjecting countless procompetitive uses to drawn out judicial scrutiny. *Id.* at 898-99.

The *Leegin* decision also tore down the artificial doctrinal wall between vertical price and nonprice restraints that had received much criticism after *Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36 (1977). *Leegin*, 551 U.S. at 904. That was a critical observation, for it permits this court and lower courts to draw upon existing vertical nonprice restraint jurisprudence in RPM cases, provided that application of the rule of reason always requires a case-by-case analysis and that there may be situations in which the anticompetitive effects of vertical price and nonprice restraints will differ.

### C.  PSKS's claims on remand and the district court's opinion.

On remand, PSKS filed a second amended complaint alleging that independent retailers were involved in the enforcement of Leegin's RPM policy. Specifically, it alleged that at a meeting, more than one hundred of Leegin's most successful retailers had reached a consensus regarding special occasion discounts and enticements and that that consensus was then adopted and announced as company policy by Leegin's president, Jerry Kohl. It further alleged that Leegin was the hub in a hub-and-spoke conspiracy, because it would intervene to resolve pricing disputes between and among competing Brighton retailers. At the same time, PSKS alleged that Leegin is "the largest single retailer of Brighton products."

PSKS finally claimed that Leegin, acting at the retail level, agreed with other retailers on the price at which Brighton goods would be sold to consumers. It therefore alleged that Leegin was involved in a horizontal price-fixing conspiracy. PSKS did not allege that retailers were the "source" of the RPM policy or that Leegin established the policy at retailers' behest. Nor did it allege any

agreement among retailers or between Leegin and competing manufacturers. The second amended complaint alleged four anticompetitive effects: (1) that consumers were made to pay an artificially high price for Brighton products; (2) that consumers were "deprived of free and open competition in the purchase of Brighton-brand products"; (3) that PSKS was hindered in its efforts to buy "competing products"; and (4) that consumers were "forced" to pay artificially high and anticompetitive prices for Brighton products.

PSKS also urged that the rule of reason is inapplicable to Leegin's conduct, because Leegin is a dual distributor. PSKS consistently alleged that RPM arrangements must be analyzed differently in dual distribution settings from how they are analyzed in the more common instance in which the manufacturer does not participate at the retail level.

PSKS alleged the relevant product markets as: (1) the "retail market for Brighton's women's accessories" and (2) the "wholesale sale of brand-name women's accessories to independent retailers." It additionally claimed that Leegin had market power based on its "highly differentiated products," its large showroom at the Dallas trade show, and its alleged position as the largest among an unspecified number of manufacturers in the proposed wholesale market.

The district court dismissed PSKS's second amended complaint, holding that it had failed to plead a plausible relevant market as required under the rule of reason; that its new horizontal restraint allegations were barred by the mandate rule; and that the horizontal claims failed as a matter of law, even if they were not barred. The court did not accept the "retail market for Brighton's women's accessories" as the relevant market, because that definition ignored the innumerable other brands that are "reasonably interchangeable in use" with Brighton products. It rejected Brighton's attempt to define Brighton as a single-brand market and held that PSKS had failed to plead a unique submarket for Brighton goods, because it had failed to first plead a "tenable dominant market."

No. 09-40506

The court also refused PSKS's second proposed market definition, which consisted of four characteristics: wholesale sale; brand-name; women's accessories; and independent retailers.

## II.

We review a dismissal under rule 12(b)(6) *de novo. Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 624 (5th Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotations omitted). The complaint need not contain "detailed factual allegations" but must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (*quoting Twombly*, 550 U.S. at 557). *See generally* 2 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 8.04[1] (3d ed. 2010).

### A.  Vertical price restraint claims after Leegin.

"To prove a Section 1 violation under rule of reason analysis, [plaintiffs] must show that the defendants' activities caused an injury to competition." *Doctor's Hosp., Inc. v. Se. Med. Alliance, Inc.,* 123 F.3d 301, 307 (5th Cir. 1997). Under the rule of reason, we examine the effect of the alleged restraint on competition, considering all the circumstances, "including the facts peculiar to the business and the history of, reasons for, and market impact of the restraint. . . ." *Royal Drug Co. v. Group Life & Health Ins. Co.*, 737 F.2d 1433, 1436 (5th Cir. 1984) (quotations omitted). We balance the "anticompetitive evils of a restrictive practice . . . against any procompetitive benefits or justifications within the con-

fines of the relevant market." *Se. Med. Alliance*, 123 F.3d at 307.

PSKS argues that the Supreme Court announced a rule-of-reason standard for vertical price restraint cases that is different from the standard that has applied to vertical non-price restraint cases since *GTE Sylvania.* Specifically, PSKS claims that under *Leegin*, a plaintiff sufficiently pleads a vertical price-fixing claim just by pleading "the existence of the agreement and the scope of its operation." We need not address that contention, because, as explained in part II.B., PSKS's claim fails anyway as a matter of market definition. For the same reason, we do not need to address the argument of *amicus* American Antitrust Institute that RPM arrangements should carry a presumption of illegality; that RPM arrangements should be treated as "inherently suspect" because they lead to higher prices or reduced output; that dual distribution systems should be presumptively illegal; and that without a presumption of illegality, the rule of reason amounts to a rule of *per se* legality for RPM.

### B. The relevant market for Brighton goods and market power.

To state an antitrust claim for anticompetitive RPM, PSKS's complaint must plausibly define the relevant product and geographic markets. *See Apani,* 300 F.3d at 627. A proposed product market must include all "commodities reasonably interchangeable by consumers for the same purposes." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956).

> Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient, and a motion to dismiss may be granted.

*Apani*, 300 F.3d at 628.

No. 09-40506

PSKS alleged two alternative product markets, neither of which encompasses interchangeable substitute products or recognizes the cross-elasticity of demand for Brighton goods. The district court properly rejected the "retail market for Brighton's women's accessories" and the "wholesale sale of brand-name women's accessories to independent retailers."

The court also correctly rejected the claim that Brighton products constitute their own market. In rare circumstances, a single brand of a product or service can constitute a relevant market for antitrust purposes. *Eastman Kodak v. Image Tech. Servs.*, 504 U.S. 451, 481-82 (1992). But that possibility is limited to situations in which consumers are "locked in" to a specific brand by the nature of the product. There is no structural barrier to the interchangeability of Brighton products with goods produced by competing manufacturers, nor has PSKS alleged any such structural barriers.

Nor does Brighton constitute its own submarket. Although a recognized submarket doctrine exists,[1] such markets must exist within broader economic markets. And the requirements for pleading a submarket are no different from those for pleading a relevant broader market.[2]

The second proposed market definition is similarly legally insufficient. "Wholesale sale" does not adequately define the relevant market, because the relevant market definition must focus on the product rather than the distribution level. PSKS has likewise failed sufficiently to allege why Brighton goods are not interchangeable with non-brand name products.[3] Nor is there any relevance

---

[1] *See Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962) (stating that within broader markets, "well-defined submarkets may exist which, in themselves, constitute product markets for antitrust purposes).

[2] *See H.J., Inc. v. Int'l Tel. & Tel. Corp.*, 867 F.2d 1531, 1540 (8th Cir. 1989); *Staples*, 970 F. Supp. at 1080 n.11.

[3] We agree with the district court that allowing PSKS to amend its complaint to correct
(continued...)

to "independent retailers" to the market definition, because PSKS has not alleged facts that could establish why independent retailers do not compete with larger chain stores in the distribution of Brighton products.

Lastly, "women's accessories" is too broad and vague a definition to constitute a market. Indeed, it is impossible to imagine that Leegin could have power over such a market. As the *Leegin* court points out, 551 U.S. at 898, even anticompetitive uses of RPM do not create concern unless the relevant entity has market power. A market-power screen is thus compatible with *Leegin* and our precedent[4] and that of our sister circuits.[5] To allege a vertical restraint claim sufficiently, a plaintiff must plausibly allege the defendant's market power.

## C. The alleged anticompetitive harm.

PSKS alleged that the RPM program forced consumers to pay "artificially" high prices for Brighton products. That claim defies the basic laws of economics. Absent market power, an artificial price hike by Leegin would merely cause it to lose sales to its competitors.

PSKS also alleged that the RPM policy deprived consumers of "free and open competition in the purchase of Brighton-brand products," because RPM

---

[3] (...continued) that deficiency would be futile in light of the complaint's other flaws.

[4] *See Muenster Butane, Inc. v. Stewart Co.*, 651 F.2d 292, 298 (5th Cir. Unit A July 1981) (observing that "if a firm lacks market power, it cannot affect the price of its product, and thus any vertical restraint could not be anticompetitive at the interbrand level." (quotation omitted)).

[5] *See, e.g., Digital Equip. Corp. v. Uniq Digital Techs., Inc.*, 73 F.3d 756, 761 (7th Cir. 1996) (Easterbrook, J.) ("[S]ubstantial market power is an indispensable ingredient of every claim under the Rule of Reason."); *Assam Drug Co. v. Miller Brewing Co.*, 798 F.2d 311, 315-16 (8th Cir. 1986) (collecting cases); *Graphic Prods. Distribs., Inc. v. Itek Corp.*, 717 F.2d 1560, 1568 (11th Cir. 1983) ("We have narrowed the broad-ranging inquiry called for by the rule of reason by insisting, at the threshold, that a plaintiff attacking vertical restrictions establish the market power of the defendant." (citing *Muenster Butane*, 651 F.2d at 298)).

No. 09-40506

limits price competition among retailers.  One problem with that argument is that it ignores interbrand competition, which forces Brighton retailers to offer a combination of price and service that attracts consumers away from competing products.  It also fails to recognize that retailers will cease carrying Brighton goods if Leegin imposes onerous requirements that make Brighton products difficult to sell.  Moreover, robust competition can exist even in the absence of price competition.  *Leegin,* 551 U.S. at 891.  Retailers may seek to attract customers with better service, more knowledgeable staff, more appealing stores, and other nonprice-oriented strategies.

Nor is the termination of PSKS as a retailer an anticompetitive effect.  It has been the rule since *United States v. Colgate*, 250 U.S. 300 (1919), that a manufacturer, acting unilaterally, can set resale prices and terminate non-conforming dealers.  Although one circuit held that "a dealer terminated for its refusal to abide by a vertical minimum price fixing agreement suffers antitrust injury and may recover losses flowing from that termination," *Pace Elecs., Inc. v. Canon Computer Sys., Inc.*, 213 F.3d 118, 1224 (3d Cir. 2000), that holding rested on the now-rejected *per se* illegal treatment of resale price maintenance, *id.* "The purpose of the antitrust laws . . . is 'the protection of *competition*, not *competitors*.'"  *Leegin*, 551 U.S. at 906 (citations omitted).

PSKS has further failed to allege any relevant factors that would indicate a plausible anticompetitive effect.  Namely, PSKS has never asserted that a cartel of retailers or one dominant retailer is the "source" of Leegin's RPM program. *See H&B Equip. Co. v. Int'l Harvester Co.,* 577 F.2d 239, 245-46 (5th Cir. 1978). PSKS has claimed that Leegin is the largest single retailer of Brighton products. It is thus difficult to conceive how independent Brighton retailers *could* be the source of the RPM program.  Nor has PSKS alleged that RPM is widespread in the relevant market, an allegation that would, in any event, contradict its claim that Brighton goods have no competition.

10

No. 09-40506

Even accepting PSKS's factual allegations as true, nothing in its complaint plausibly alleges a harm to interbrand competition. In *Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 489 (1977), the Court held that antitrust plaintiffs must allege and prove an injury that "reflect[s] the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." No rule of reason can require defendants to litigate antitrust claims that do not state an antitrust injury beyond motion to dismiss. The attempt to eliminate claims that do not state an offense under the Sherman Act was at the core of *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 553, and PSKS's complaint fails at that most basic level.

## D.  The horizontal-restraint claims.

PSKS argues that the district court erred in holding that its horizontal-restraint claims are barred by the mandate rule, which precludes litigation of waived issues on remand because they were never raised in district court. *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004). PSKS's attempt to plead horizontal-restraint claims for the first time in the second amended complaint mirrors previous efforts by past antitrust plaintiffs whose original claims were rejected by the Supreme Court.[6] PSKS attempted to argue its horizontal claims before the Supreme Court, but the Court explicitly refused to address the issue, because it had not been raised in the lower courts. *Leegin*, 551 U.S. at 907-08. The district court rightly dismissed the horizontal-restraint claims as barred by the mandate rule.

---

[6] *See Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 461 F. Supp. 1046, 1051-52 (N.D. Cal. 1978), *aff'd*, 694 F.2d 1132 (9th Cir. 1982) (foreclosing plaintiff's attempt to assert new horizontal theories on remand after the Supreme Court reversed the *per se* rule against nonprice vertical restraints and holding that "[s]uch a theory of Section 1 liability has never before been asserted by plaintiff and it cannot properly do so now"); *see also Omni Outdoor Adver. v. Columbia Outdoor Adver.*, 974 F.2d 502, 505-06 (4th Cir. 1992).

In any event, PSKS has not properly alleged its horizontal-restraint claims, and, irrespective of the mandate rule, the claims must be dismissed on the pleadings. As already discussed, PSKS has failed to allege that retailers were the source of the price restraint, an allegation that would have been potentially inconsistent with the complaint's factual assertion that Leegin is the largest single retailer of Brighton goods.

PSKS claims that Leegin entered into a horizontal price-fixing conspiracy by discussing special occasion discounts with its retailers in Hawaii. PSKS essentially argues that manufacturers implementing RPM cannot calibrate prices through discussions with their retailers. We cannot agree. Such a rule "can lead, and has led, manufacturers to take wasteful measures. . . . The increased cost these burdensome measures generate flow to consumers in the form of higher prices." *Leegin*, 551 U.S. at 903 (citing Brief for PING, Inc., as *amicus curiae* supporting petitioner). A manufacturer's discussion of pricing policy with retailers and its subsequent decision to adjust pricing to enhance its competitive position do not create an antitrust violation or give rise to an antitrust claim.

PSKS's reliance on *Toys "R" Us* for its hub-and-spoke conspiracy claim is also misguided. PSKS has not alleged that any dominant retailer imposed the RPM policy on Leegin, nor has it alleged an agreement among retailers to implement the RPM policy. In the absence of an assertion that retailers agreed to RPM among themselves, there is no wheel and therefore no hub-and-spoke conspiracy, and that allegation was therefore properly dismissed.[7]

PSKS further argues that because Leegin is a dual distributor, operating as both a manufacturer and retailer of Brighton goods, the RPM policy is a horizontal restraint. It claims that Leegin's retail presence gives it an incentive to raise retail prices through RPM in order to capture greater profits. Economic

---

[7] Similarly off the mark is PSKS's reliance on *United States v. McKesson & Robbins, Inc.*, 351 U.S. 305 (1956), a statutory-interpretation case that is not relevant to the issue.

No. 09-40506

logic tells us otherwise.

Leegin participates in the retail market with nearly 5000 other stores. It must share any profit increase at the retail level with those other retailers. If Leegin sought only to raise its margins, it would raise the price of Brighton goods at the wholesale level, where it could capture all the gains. Leegin is thus no different from a manufacturer that does not have retail stores[8]; it would normally seek to minimize retailer margins as much as possible, including at its own retail stores.[9] *See Leegin*, 551 U.S. at 896.

AFFIRMED.

---

[8] As the district court noted, eight other circuits have applied the traditional rule of reason to dual distribution systems. *See AT&T Corp. v. JMC Telecom, LLC*, 470 F.3d 525, 531 (3d Cir. 2006); *Electronics Commc'ns Corp. v. Toshiba Am. Consumer Prods., Inc.,* 129 F.3d 240, 243-44 (2d Cir. 1997); *Glacier Optical, Inc. v. Optique du Monde*, 46 F.3d 1141 (9th Cir. 1995) (unpublished); *Smalley & Co. v. Emerson & Cuming, Inc.,* 13 F.3d 366, 368 (10th Cir. 1993); *Hampton Audio Elecs., Inc. v. Contel Cellular, Inc.,* 966 F.2d 1442 (4th Cir. 1992) (unpublished); *Ill. Corporate Travel, Inc. v. Am. Airlines, Inc.*, 889 F.2d 751, 753 (7th Cir. 1989); *Int'l Logistics Group, Ltd. v. Chrysler Corp.*, 884 F.2d 904, 906 (6th Cir. 1989); *Ryko Mfg. Co. v. Eden Servs.*, 823 F.2d 1215, 1230-31 (8th Cir. 1987).

[9] "A manufacturer that helps dealers form a cartel is doing itself in. It will sell less, and dealers will get the monopoly profits." Easterbrook, *Vertical Restraints and the Rule of Reason*, 53 ANTITRUST L.J. 135, 142 (1984).